**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph Anthony CORDOVA,
Defendant-Appellant.**

**No. 76-1183.**

United States Court of Appeals,
Ninth Circuit.

June 22, 1976.

Rehearing Denied July 20, 1976.

Donald E. Wolfram (argued), of Wolfram & Trujillo, Phoenix, Ariz., for defendant-appellant.

Joel D. Sacke, Asst. U. S. Atty. (argued), Phoenix, Ariz., for plaintiff-appellee.

OPINION

Before WRIGHT, KILKENNY and SNEED, Circuit Judges.

PER CURIAM:

Cordova was convicted after jury trial of possession of heroin with intent to distribute [21 U.S.C. § 841(a)]. We affirm.

Cordova raises four issues which merit discussion: (1) validity of the search; (2) double jeopardy; (3) speedy trial; and (4) testimony by a prosecution witness concerning Cordova's past criminal conduct, unrelated to the crime charged.

■ Heroin and other evidence was seized from the home of Ms. Klase, who later became a government witness. Cordova has no "automatic" or "actual" standing to object to the seizure of any item, as he did not at the suppression hearing assert a possessory interest in any, and the government's case does not depend on proof of his possession at the time of the search. *See Brown v. United States*, 411 U.S. 223,

228–29, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *United States v. Boston*, 510 F.2d 35 (9th Cir. 1974).

■ Cordova's double jeopardy argument lacks merit. After his arrest he was prosecuted first by the state of Arizona. That action was dismissed before trial for failure to comply with the state's speedy trial rule. The proceeding in state court did not place him in jeopardy. *See United States v. Crosson*, 462 F.2d 96, 103 (9th Cir. 1972).

■ But we need not reach that question since successive state and federal prosecutions "[do] not violate the proscription of double jeopardy included in the Fifth Amendment." *Bartkus v. Illinois*, 359 U.S. 121, 132–33, 79 S.Ct. 676, 683, 3 L.Ed.2d 684 (1959). *See also Crosson, supra.*

■ We turn to the speedy trial issue. Cordova argues that a lapse of 14 months from the date of arrest by Phoenix police (November 2, 1973) to the date of his federal indictment (January 22, 1975) constituted a denial of his Sixth Amendment right to a speedy trial.[1]

■ Cordova's speedy trial right under the Sixth Amendment was not activated until the date of federal "accusation." *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). That is the date on which a defendant is arrested and held to answer on a criminal charge, or the date on which he is formally charged, whichever is earlier. *Marion*, 404 U.S. at 320, 92 S.Ct. 455. *See also Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975).

■ Cordova was not arrested by federal authorities or held to answer on the charge now before us before the date of federal indictment. Since the federal prosecution did not start until January 22, 1975, Cordo-

---

1. Cordova was tried and convicted on December 9, 1975. He does not argue that there has been a violation of the Speedy Trial Act [18 U.S.C. §§ 3161 *et seq.*]. Nor can he. Sanctions under Section 3162, imposed for violation of Section 3161(b) & (c), are not applicable until June 30, 1979. *See* Section 3163; *United States v. Tirasso*, 532 F.2d 1298, 1300 n. 1 (9th Cir. 1976). Section 3164 was not effective until

September 29, 1975. *Id.* Section 3164(b) provides that for any person incarcerated before the effective date of Section 3164, trial "shall commence no later than ninety days following the first day of the interim period." In the instant case, Cordova's trial date (December 9, 1975) is clearly within 90 days of September 29. There was no Speedy Trial Act violation.

va's Sixth Amendment rights were not activated until that date. *Marion*, 404 U.S. at 313, 92 S.Ct. 455.

The fact of Cordova's arrest in November by state officers is irrelevant to the issue before us because that arrest was for alleged violation of Arizona, not federal, law. *See Gravitt v. United States*, 523 F.2d 1211, 1215 n. 6 (5th Cir. 1975); *United States v. Lemons*, 470 F.2d 135, 137 (3rd Cir. 1972); *United States v. DeTienne*, 468 F.2d 151, 155 (7th Cir. 1972).

■ Nor can Cordova benefit from the coincidence that the state prosecution following the November arrest was for the same illegal activity as that involved in the federal prosecution. As we have discussed, separate sovereignty allows both prosecutions. There is no indication that the state arrest and prosecution constituted "a mere 'temporary device' used to restrain appellant" until federal authorities might choose to prosecute. *United States v. Cabral*, 475 F.2d 715, 718 (1st Cir. 1973). *See also DeTienne, supra,* 468 F.2d at 155.[2]

■ Cordova's allegation of pre-accusation delay must, then, be based upon the due process clause of the Fifth Amendment, not the speedy trial clause of the Sixth Amendment. *Marion*, 404 U.S. at 324, 92 S.Ct. 455. If so, the standards in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), do not apply here. Cordova can prevail only by demonstrating that the 14-month delay caused substantial, actual prejudice and was an intentional device on the part of the government to gain tactical advantage. *Marion*, 404 U.S. at 324, 92 S.Ct. 455; *United States v. Andros*, 484 F.2d 531, 533 (9th Cir. 1973). He made no such showing below and we must reject his speedy trial argument.

We next face a question raised by testimony of Klase concerning past criminal activity of Cordova, unrelated to the crime charged. Relevant portions are set forth in the margin.[3]

■ Cordova did not testify and Klase's testimony was clearly inadmissible. *See*

---

**2.** In *Reese v. United States Board of Parole*, 530 F.2d 231 (9th Cir. 1976), a divided panel of this court held that the due process requirements of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), were not invoked merely because federal authorities had lodged a detainer against a federal parolee then held in state prison. Dissenting Judge Duniway focused on the fact that

"a detainer, when lodged, puts the detainee in the joint custody of the prison authority and of the person or body issuing the warrant which is the basis for the detainer. *Braden v. 30th Judicial Circuit Court of Kentucky*, 1973, 410 U.S. 484, 489 n. 4, 93 S.Ct. 1123, 35 L.Ed.2d 443."

*Id.* at 238.

In this case, Cordova was prosecuted by the state with no exercise of control over defendant by the federal government. Not until some time after the state prosecution was dismissed did the federal government take control by means of indictment.

**3.** "Q. Did you ever find out what kind of business he was in?

A. At first, no; I did not. He just said that he worked for his father. He was in land management and that's all I believed. That's what I took, was what he told me.

Q. Did you ever find out what he really did?

A. Later in years.

Q. About how much later?

A. Oh, about three, two or three years later, I found out, and this is what made me decide to do what I did.

Q. Well, what did you find out that he did?

A. Well, at first he started taking care of a lot of hot items, stolen items, would sell them.

MR. WOLFRAM: If it please the Court, I must object. This is, first of all, totally irrelevant and, secondly, highly prejudicial.

THE COURT: All right, just testify as to the merits of this case, nothing extraneous.

THE WITNESS: Okay.

\* \* \* \* \* \*

Q. Did you ever sell heroin on the street?

A. No, I did not.

Q. Did you ever make a delivery?

A. At one time, yes.

Q. Do you recall when that was and how much it was?

A. I don't remember how much, maybe ten to fifteen papers. I don't recall. I can't remember. It wasn't a great amount. I do remember that. He was gone for the weekend. Later, I found out he was serving probation time in jail is how I found out why he was gone on the weekend.

MR. WOLFRAM: If it please the Court, at this time, since the witness has been previously instructed, I would move for a mistrial.

*Michelson v. United States,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Lyda v. United States,* 321 F.2d 788, 795–96 (9th Cir. 1963). However, we believe that exposing the jury to it was harmless error within the meaning of Fed.R.Crim.P. 52(a). *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

First, the offending remarks came from the mouth of an unresponsive witness and were not invited by the prosecution. *Contrast Lyda, supra,* 321 F.2d at 795. *Cf. Ailsworth v. United States,* 448 F.2d 439, 441 (9th Cir. 1971). Second, the evidence of Cordova's guilt was overwhelming. *Contrast, Lyda, supra,* 321 F.2d at 796. Third, the trial judge gave prompt corrective instructions. *Donnelly, supra,* 416 U.S. at 644, 94 S.Ct. 1868. While defense counsel properly and promptly objected to the volunteered and unresponsive answer in each instance, those objections and motions for mistrial do not, in the context of the entire trial, mandate reversal.

Appellant's other contentions are without merit.

AFFIRMED.

THE COURT: Objection is overruled. Proceed. Just keep your testimony down to this case.

THE WITNESS: All right, I am sorry.

\* \* \* \* \* \*

A. Like I said, I found out that he was married. I found out what his real name was, who he really was.

Q. How did you find all this out, by the way?

A. Because in—a few months before that, prior, he was busted.

Q. Well, we don't—just talk about—you say you found out.

MR. WOLFRAM: If it please the Court, I would renew my motion for a mistrial at this time.

THE COURT: Overruled.

MR. WOLFRAM: If it please the Court, I would request that the jury be instructed that any of these things may tend to somehow imply to them other matters not material to this case, that they put those matters out of their minds.

THE COURT: Yes, anything that has to do with any inference that might be alluded to, of any other type of involvement against the law, you are to exclude that completely. We are not concerned with anything else, other than this particular charge here and there is no evidence of any other crimes having been committed and so, if you would just—the witness, I am directing this to the witness, just testify now as to just this particular charge here, the heroin, and don't bring anything else in about anything other, because we are not concerned with that.

THE WITNESS: Okay."

[C.T. 18–19; 26–27; 31–32.]