**UNITED STATES of America, Plaintiff,**

v.

**Teruo OKUDA, Defendant.**

**Crim. No. 87–00995.**

United States District Court,
D. Hawaii.

Aug. 11, 1987.

R. Michael Burke, Asst. U.S. Atty., U.S. Atty.'s Office, Honolulu, Hawaii, for plaintiff.

Walter Horie, Honolulu, Hawaii, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CRIMINAL COMPLAINT WITH PREJUDICE, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS INDICTMENT

KAY, District Judge.

### I. BACKGROUND

On June 10, 1987, the defendant, Teruo Okuda, arrived in Honolulu. On June 12, 1987, he was arrested by the Department of Justice and the Immigration and Naturalization Service (hereinafter referred to as the I.N.S.). He was held in custody for purposes of both immigration and criminal investigations. On June 13, 1987, he posted a bond of $75,000 with the I.N.S., and was released from custody by an I.N.S. judge subject to the normal restrictions against travel outside the island of Oahu.

On June 15, 1987, the criminal complaint was filed, charging the defendant with having willfully and knowingly used a false visa, in violation of 18 U.S.C. § 1546. The defendant made his initial appearance before Magistrate Daral Conklin. He posted a $75,000 signature bond, again with the normal restrictions against travel outside the island of Oahu. The $75,000 cash bond posted with the I.N.S. would be transferred to the federal court at such time as the I.N.S. released the money.

The government and the defendant engaged in plea negotiations. On June 23, 1987, the defendant offered to waive indictment and to enter an unconditional plea of guilty pursuant to an information. The government rejected the offer, demanding

a particular sentence under Fed.R.Crim.P. 11(e)(1)(C). The parties did not reach agreement on the appropriate sentence.

On July 13, 1987, the defendant lodged an Ex Parte Motion to Shorten Time on a Motion to Dismiss Under 18 U.S.C. § 3161. On July 14, 1987, the government lodged an order for dismissal pursuant to Fed.R. Crim.P. 48(a). The government's order was apparently intended to substitute as a motion to dismiss without prejudice. The court shortened time to hear the defendant's motion to dismiss and took the government's order under advisement. Therefore, the parties agree that the complaint should be dismissed, but disagree as to whether the dismissal should be with or without prejudice.

On July 16, 1987, the grand jury indicted Mr. Okuda on two counts. Count 2 is the same charge contained in the complaint, use of a false visa in violation of 18 U.S.C. § 1541. Count 1 is for the somewhat different crime of false statement, 18 U.S.C. § 1001.

## II. THE COMPLAINT

18 U.S.C. § 3161(b) requires that an individual must be charged with an indictment or information within thirty days after arrest.[1]

■ The issue presented is whether the Speedy Trial Act begins to run from June 13, 1987, the date of arrest, or from June 15, 1987, the date of the criminal charge and arraignment.

The government argues that the Speedy Trial Act clock commences to run when a defendant is charged, and not when a defendant is informally arrested. *United States v. Solomon,* 679 F.2d 1246 (8th Cir. 1982). In *Solomon,* the defendant was arrested and then immediately released. The Eighth Circuit held that the initial arrest did not trigger the Speedy Trial Act. The Ninth Circuit indicated that it might rule

similarly if the defendant was "released without charge and without other continuing restraint." *United States v. Antonio,* 705 F.2d 1483, 1485 n. 1 (9th Cir.1983).

However, in *United States v. Osunde,* 638 F.Supp. 171 (N.D.Cal.1986), the defendant was arrested by I.N.S. agents on December 4, 1985 for using a false visa. He was never released. The criminal complaint was filed on March 21, 1986 at which time the defendant was first brought before a United States Magistrate. An indictment was delivered on April 2, 1986. The government argued then, as it does now, that the initial arrest by the I.N.S. agents did not trigger the Speedy Trial Act. The court held then, as this court does now, that the government is wrong.

The *Osunde* court distinguished *Solomon* as a case where the defendant was not placed under any continuing detention or restraint. To apply *Solomon* to the facts in *Osunde* would permit the government to hold an individual for an indefinite period, so long as the government filed the indictment within thirty days of the criminal complaint. Thus, the court in *Osunde* held that the Speedy Trial Act was invoked by the initial federal arrest.

Although Mr. Okuda was released from detention on June 13, 1987, he was placed on bail, forbidden from leaving the Island of Oahu, and prevented from returning home. The government contends that on June 12, 1987 there was "a mere informal arrest as to criminal matters, but a formal arrest as to the administrative process." Whether the arrest was formal or informal, Mr. Okuda was physically detained for a short period and a continuing restraint was placed on his physical movement. The critical issue is the substance of the restraint, not the semantical terminology for the arrest. "It is the restraint on individual liberty not merely procedural stagnation following the filing of formal charges which

---

1. 18 U.S.C. § 3161(b) states: Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

Congress intended to protect against when it passed the Act." *Osunde*, 638 F.Supp. at 174.

■ Mr. Okuda's status as an alien raises an issue which the *Osunde* court left unresolved.[2] In *U.S. v. Reme*, 738 F.2d 1156 (11th Cir.1984), a group of Haitian refugees were picked up by the I.N.S. for illegally entering the United States. About one year later, one of the refugees was charged and indicted for bringing illegal aliens into the United States. The court held that the arrest by the I.N.S. was for an offense different than alleged in the criminal charge. The I.N.S. arrested the defendant for illegally entering the United States in violation of immigration regulations. The defendant was held on that administrative charge and for no other reason. After subsequent investigation, the government discovered that the defendant was also guilty of the crime of importing illegal aliens. The court held that the Speedy Trial Act did not begin to run until the defendant was charged with the criminal complaint.

Here, Mr. Okuda was arrested by both I.N.S. and federal agents on the same charge, use of a false visa. The government argues that the immigration process is administrative whereas the criminal process is judicial. The administrative and criminal charges, therefore, are inherently different.

The court is not convinced. The holding in *Reme* was based upon the factual differences between the two charges, not merely the technical jurisdiction of each. In *Reme*, the defendant was initially held for simply entering the United States illegally. He was then criminally charged for bringing others into the United States illegally. Here, the administrative and criminal charges are identical. The necessary elements and evidence for both charges are the same. Thus, *Reme* is clearly distinguishable.

Unlike *Reme*, the government did not require additional time to discover new facts. In arresting Mr. Okuda, the government either had sufficient proof to indict or it did not. If the government had sufficient proof to arrest the defendant on the administrative charge, it had sufficient proof to indict the defendant on the identical criminal charge.

Furthermore, the use of the I.N.S. as a substitute for criminal arrest is improper. The government through the I.N.S. arrests non-citizens and places them under a continuing restraint knowing and intending that criminal charges will later be brought. The government then charges the defendant with the crime, and expects additional time to maintain the restraint without justification. To elevate form over substance in this matter would make a mockery of the spirit of the Speedy Trial Act. Congress has given the government thirty days to indict. If the government cannot do so, it must release the defendant. It may not manipulate the I.N.S. to do what it could not do alone.

The Ninth Circuit has indicated that an arrest by state authorities to temporarily restrain a defendant until federal authorities decide to prosecute triggers the Speedy Trial Act. *United States v. Cordova*, 537 F.2d 1073, 1076 (9th Cir.1976). This court finds similarly that Okuda's arrest by I.N. S. officials initiated the thirty day period under the Speedy Trial Act where the government fully intended to charge the defendant with the identical criminal charge and purposefully utilized the I.N.S. to detain the defendant pending the filing of the criminal complaint.

Therefore, the government's failure to dismiss by July 13, 1987 requires the dismissal of the complaint. 18 U.S.C. § 3161(b).

---

2. The *Osunde* court stated: "It appears to the Court that the defendants alien status may impact on the analysis of the Speedy Trial Act's application to the present facts; more specifically, whether or not defendant's arrest was in connection with the charges he now faces. *See United States v. Reme*, 738 F.2d 1156 (11th Cir. 1984); *United States v. Brooks*, 670 F.2d 148 (11th Cir.1982). Because the parties, however, did not address the issues in either the written briefs or oral arguments, this Court specifically declines to consider the issue in its ruling." *Osunde*, 638 F.Supp. at 175 n. 2.

■ In determining whether to dismiss the complaint with or without prejudice, the court must consider three factors: 1) the seriousness of the offense; 2) the facts and circumstances of the case which led to dismissal; and 3) the impact of reprosecution on the administration of the Speedy Trial Act and the administration of justice.[3]

■ The complaint charges the defendant with using a false visa, in violation of 18 U.S.C. § 1541 which carries a maximum penalty of five years imprisonment, a fine of $2,000, or both. Under 18 U.S.C. § 3623, the maximum possible fine is increased to $250,000. Although a felony, the offense is considered relatively non-serious by the Parole Commission among the categories of felonies. *Osunde*, 638 F.Supp. at 175.

The court recognizes that in *Osunde*, the defendant had no criminal record. In contrast, Mr. Okuda allegedly has a prior criminal history involving violent crimes. Therefore, under the particular facts of this case, the seriousness of the offense is greater than in *Osunde*.

Nevertheless, the government's actions in failing to indict are inexcusable. The defendant offered to waive indictment and unconditionally plead guilty to an information. The government refused because it demanded that the defendant plead guilty to a sentence certain pursuant to Fed.R.Crim.P. 11(e)(1)(C).

The government asserts four reasons why its actions were justified: 1) the public has an interest in proceeding by way of indictment rather than information; 2) the government need not prioritize the defendant's case over other cases, 3) the public needs to be protected from organized crime figures from Japan, 4) the government is concerned that the sentence will not be sufficiently severe and wants an assurance that if the court imposes sentence, there will be sufficient time to gather necessary information for sentencing.

First, the public has no interest in convening a grand jury to indict a person who is willing to plead guilty unconditionally. Unless waived by the defendant, the government must establish probable cause to the satisfaction of either a grand jury for an indictment, Fed.R.Crim.P. 6., or a magistrate or other judicial officer for an information, Fed.R.Crim.P. 5. Either process is sufficient. *Austin v. United States*, 408 F.2d 808 (9th Cir.1969).

The government argues that a grand jury provides the public with input into the criminal process, and this process may have some intrinsic value. But the grand jury is not a public-sponsored lesson in civics. The public has no interest in academic exercises of no practical use. When a defendant is willing to plead guilty, the indictment process becomes superfluous. The primary purpose of both the indictment and information process is to protect defendants from overzealous U.S. Attorneys. *See Naples v. United States*, 307 F.2d 618 (D.C. Cir.1962). Therefore, the purpose is satisfied where the defendant makes an informed and unconditional plea of guilty.

Second, the government insists that the defendant must wait his turn while other cases are handled. The argument has a barely tenuous link to reality. The government may either expend thirty minutes with a plea agreement, or several hours with an indictment and several days with a trial. The result is the same if the defendant is found guilty. Additionally, with a trial, the government risks the possibility that the defendant may be found not guilty. By refusing to accept Mr. Okuda's plea of guilty, the government wastes time and resources (both its own as well as this court's) with no concomitant possibility of any additional gain. The prioritization ar-

---

**3.** 18 U.S.C. § 3162(a)(2) states: "If in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."

gument, therefore, is nothing other than a rationalization of an indefensible position.

The court concurs with the government's third argument that the people of Hawaii should be protected from members of organized crime, whether Japanese or otherwise. The court embraces the government's purpose in discouraging the infiltration of organized crime into Hawaii's economy.

The government's fourth argument is simply a misguided intrusion into the judicial sphere. The government justifies its refusal to accept an unconditional plea agreement because of a belief that the court will not impose a sufficiently harsh sentence to deter other Japanese criminals who might otherwise attempt wrongful entry. Therefore, the government will only permit the defendant to plead guilty if the court will accept a particular sentence (a substantial fine) pursuant to Fed.R.Crim.P. 11(e)(1)(C).

The government has a duty to provide input into the sentencing process. It is the function of the court, however, to make the ultimate decision.

Finally, the government argues that it has not been given sufficient time in the past to obtain information regarding a defendant prior to sentencing. The court is unaware of any case in which an immediate sentence was imposed where the parties had not stipulated to the sentence. This court's consistent policy has been to require a pre-sentence report. In one case, this court allowed only 10 days for sentencing and preparation of the pre-sentence report. But that involved a Japanese defendant who was on his honeymoon and had been incarcerated for 29 days prior to his appearance to plead guilty and who would continue to be detained in prison until sentenced. Still, the pre-sentence report furnished ample guidance of the defendant's prior criminal record and other customary data. *U.S.A. v. Kiyokatsu Meguro;* Cr. 87–00488–01.

In this case, as in others, the government has refused to accept an unconditional plea of guilty, and instead has insisted that the defendant plead guilty to a sentence certain under a plea agreement. The government's rationale is its fear that the court will not allow adequate time within which to establish the defendant's prior criminal record and consequently the defendant will be sentenced "in a vacuum." Yet any insufficiency of information for the court in sentencing would likewise hamper the government in determining an appropriate sentence certain under a plea agreement. However, the court reiterates that its practice is to both require and allow time for an adequate presentence report.

Reprosecution would provide no incentive for the U.S. Attorney's Office to correct its policy. The administration of the Speedy Trial Act and the administration of justice requires that the U.S. Attorney's Office be prevented from employing such a policy. The court recognizes that *Osunde* is not necessarily dispositive on this issue because the penalty of deportation is greater for an alien intending to establish a permanent residency than for an alien intending to merely vacation for a short period of time. Nevertheless, the court finds that the complaint must be dismissed with prejudice.

### III. THE INDICTMENT

The grand jury indicted the defendant on July 16, 1987. The indictment contains two counts. Count 2 is the same as the complaint. Therefore, Count 2 of the indictment is dismissed with prejudice. But as the defendant conceded, Count 1 cannot be dismissed pursuant to the Speedy Trial Act. *United States v. Pollock,* 726 F.2d 1456 (9th Cir.1984).

Count 1 of the indictment may, however, be dismissed pursuant to Fed.R.Crim.P. 48(b). *Id.* at 1463 n. 11. The defendant urges the court to analyze this case similar to the Supreme Court's analysis of Sixth Amendment violations. Wright, Federal Practice and Procedure: Criminal 2d, § 814. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court held that the trial court should consider, among others, four factors in determining whether to dismiss a case under the Sixth Amendment. These

factors are: 1) length of delay; 2) reasons for the delay; 3) defendant's assertion of the right; and 4) prejudice to the defendant. *Id.* at 531, 92 S.Ct. at 2192.

The length of delay in this case was very brief. The government, at worst, indicted the defendant thirty-four days after arrest. Consequently, the first factor weighs against dismissal.

The court has already discussed its disagreement with the government's policies regarding unconditional plea agreements. Although the court is not satisfied with the government's reasons for delay, the government's culpability is somewhat mitigated by the government's lack of prior notice regarding the court's legal conclusions in this matter. Moreover, count one of the indictment is a new charge brought under a different statute than the charge contained in the complaint.

The defendant moved to dismiss the complaint before the government attempted to dismiss. However, the requests were filed within hours of each other. Thereafter the defendant sought to dismiss the indictment. Therefore, the third factor is not accorded substantial weight.

Finally, the defendant has suffered no prejudice from the delay. He was released on bail, and is now permitted to return to Japan to await trial. He made no earlier effort to remove the restraint against returning to his homeland. There has been no showing of prejudice. The total absence of prejudice weighs against dismissal.

In summary, the factors of the *Wingo* test militate against dismissal.

■ Although it should do so only with caution, the court may dismiss an indictment with prejudice under Fed.R.Civ.P. 48(b). One reason for dismissing an indictment for failure to prosecute is where the delay is due to an improper purpose. *In the matter of Provoo,* 17 F.R.D. 183 (Md. 1955) aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed.2d 761 (1955). But before dismissing a case with prejudice on account of certain conduct practiced by the U.S. Attorney's Office, a forewarning

should be given. *United States v. Gatto,* 763 F.2d 1040, 1050 (9th Cir.1985).

Recently, the judges and magistrates of this district have expressed their concern with this policy practiced by the U.S. Attorney's Office. Until now, however, the court has never had an opportunity to actually rule upon the issue or reach a legal conclusion. Therefore, the U.S. Attorney's Office has never been placed on formal notice that its policy may violate the requirements of Fed.R.Crim.P. 48(b). By this order, the U.S. Attorney's Office may consider itself on notice.

Accordingly, the court finds that dismissal of count one of the indictment under Fed.R.Crim.P. 48(b) is not justified under the present circumstances. The court expresses no opinion as to whether the same conclusion would be reached had the government received notice of the court's clear disagreement with its policy of refusing unconditional pleas of guilty.

■ If the U.S. Attorney's Office refuses unconditional pleas of guilty in the future, it should have specific justifications for its actions. If it does not, this court in its discretion may dismiss such cases with prejudice pursuant to Fed.R.Crim.P. 48(b).

Accordingly, IT IS HEREBY ORDERED that the Government's Motion to Dismiss the Complaint is DENIED, the Defendant's Motion to Dismiss the Complaint with Prejudice is GRANTED, and the Defendant's Motion to Dismiss the Indictment is GRANTED with respect to Count 2 and DENIED with respect to Count 1.