UNITED STATES of America, Plaintiff–Appellee,

v.

**Ruben CEPEDA–LUNA, Defendant–Appellant.**

No. 92–30057.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1993.

Decided March 30, 1993.

Linda Friedman Ramirez, argued, Leslie Kay, on brief, Linda Friedman Ramirez, P.C., Portland, OR, for defendant-appellant.

Jonathan S. Haub, Asst. U.S. Atty., Portland, OR, for plaintiff-appellee.

Before: D.W. NELSON, TROTT and T.G. NELSON, Circuit Judges.

TROTT, Circuit Judge:

■ We are asked to decide in this case whether a civil arrest pursuant to deportation proceedings starts the clock under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, for criminal charges which are later filed against the detainee. We hold that except in cases of collusion between Immigration and Naturalization officials and criminal authorities, where the civil detention is merely a ruse to avoid the requirements of the Speedy Trial Act, civil detention does not trigger the thirty-day clock under the Speedy Trial Act.

I

BACKGROUND

Appellant Ruben Cepeda–Luna appeals his indictment and subsequent conviction for illegal reentry, in violation of 8 U.S.C. § 1326 (1988). Cepeda–Luna alleges the district court erred by not dismissing the indictment under the Speedy Trial Act, 18 U.S.C. § 3161(b), because more than thirty days elapsed between his civil deportation arrest on July 12, 1991, and his indictment for illegal reentry on October 18, 1991. We have jurisdiction under 28 U.S.C. § 1291 to review this final decision of the District Court.

Cepeda–Luna was arrested in Oregon on March 9, 1990, for drug offenses and was subsequently released from custody. He was arrested for drug distribution twice more on March 14 and April 10, 1990. While he was awaiting trial on these various charges, the Immigration and Naturalization Service ("INS") placed a "detainer" on him on April 26, 1990. He was convicted of the March 14 drug charges on June 11, 1990, and the April 10 charges on December 3, 1990. On December 20, 1990, INS issued an order to show cause why Cepeda–Luna should not be subject to civil deportation as an alien convicted of an aggravated felony and controlled substance offenses. *See* 8 U.S.C. §§ 1251(a)(2)(A)(iii), (B)(i). Although a deportation hearing was never conducted, the INS detainer remained in effect.

Cepeda–Luna was indicted on the March 9 drug charges in February, 1991 and convicted of that offense on July 10, 1991, receiving two years probation. At that time, Multnomah County notified INS of Cepeda–Luna's pending release and on July 12, 1991, INS Agent Peterson served Cepeda–Luna with an administrative arrest warrant pursuant to 8 U.S.C. § 1252 (1988). Cepeda–Luna continued to be incarcerated under this warrant, although INS instigated no further civil deportation proceedings.

INS Agent Ruben Vela became aware of Cepeda–Luna's status on September 18, 1991 and another deportation arrest warrant was served. At that time Vela began preparing Cepeda–Luna's case for criminal prosecution. Cepeda–Luna was indicted for illegal reentry on October 18, 1991, and was arraigned on October 22, 1991. Judge Malcolm Marsh of the District Court of Oregon found no violation of the Speedy Trial Act on November 25, 1991. *United States v. Cepeda–Luna*, 781 F.Supp. 684 (D.Or.1991). Cepeda–Luna pled guilty on December 4, 1991, and was subsequently sentenced to thirty months imprisonment.

## II

### SPEEDY TRIAL ACT

■ We review factual findings concerning the Speedy Trial Act for clear error and questions of law regarding its interpretation de novo. *United States v. Nash*, 946 F.2d 679, 680 (9th Cir.1991).

The Speedy Trial Act requires federal authorities to indict and bring to trial incarcerated individuals within rigidly specified time periods. At issue in this case is the requirement that a detained individual be indicted within thirty days of his arrest:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b). If a violation occurs, the Act mandates dismissal:

If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

18 U.S.C. § 3162(a)(1). Cepeda–Luna contends the Speedy Trial Act was violated because more than thirty days elapsed from his civil arrest by INS agents on July 12, 1991, in connection with possible deportation proceedings, and his indictment for illegal reentry on October 18, 1991.

The language of the Speedy Trial Act compels the conclusion that its provisions do not apply to civil detentions. The thirty-day requirement applies to an indictment issued in connection with the offense for which the defendant was arrested. 18 U.S.C. § 3161(b). "Offense" is further defined as "any Federal *criminal* offense." 18 U.S.C. § 3172(2) (1988) (emphasis added).[1] The offense for which petitioner was initially arrested, however, was not a federal criminal offense. On July 12, 1991, Cepeda–Luna was detained by INS agents on civil deportation charges as authorized by 8 U.S.C. § 1252. This statute is a civil provision of the Immigration and Nationality Act, and deportation proceedings pursuant to those sections consistently have been classified as civil rather than criminal proceedings. *Argiz v. United States Immigration*, 704 F.2d 384, 387 (7th Cir.1983). In addition, the Act's mandatory dismissal section, 18 U.S.C. § 3162(a)(1), applies only to a criminal complaint. *United States v. Candelaria*, 704 F.2d 1129, 1131 (9th Cir. 1983). No criminal complaint was filed against Cepeda–Luna when he was incarcerated by INS officials on July 12, 1991. In fact, a criminal complaint was not filed

---

1. *18 U.S.C. § 3172(2) provides:*
   [T]he term 'offense' means any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a Class

   B or C misdemeanor or an infraction, or an offense triable by court-martial, military commission, provost court, or other military tribunal).

in his case until October 18, 1991. Because the initial detention was civil in nature and federal criminal charges were not filed at that time, we cannot apply the thirty-day indictment requirement of the Speedy Trial Act from the moment of Cepeda–Luna's arrest on civil deportation charges on July 12, 1991.

The fact that criminal authorities may have played some role in Cepeda–Luna's initial detention does not necessarily mandate the application of the Speedy Trial Act to civil detentions. This circuit has repeatedly declined to apply the Speedy Trial Act in situations where the defendant's detention is not pursuant to federal criminal charges, even though federal criminal authorities may be aware of and even involved with that detention. *See, e.g., United States v. Orbino*, 981 F.2d 1035, 1036–37 (9th Cir.1992) (fact that federal prosecutors "kept a sharp eye" on civil immigration proceedings does not trigger Speedy Trial clock); *United States v. Redmond*, 803 F.2d 438, 440 (9th Cir.1986) (Speedy Trial Act not implicated when defendant transported from state to federal custody in anticipation of federal charges but returned to state custody the same day), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 534 (1987); *United States v. Manuel*, 706 F.2d 908, 914–915 (9th Cir. 1983) (four month delay between tribal arrest and federal indictment did not violate Speedy Trial Act); *United States v. John-*

*son*, 953 F.2d 1167, 1172 (9th Cir.) (although F.B.I. actively participated in criminal investigation, Speedy Trial Act commenced only upon federal indictment and not defendant's arrest and incarceration by state authorities), *cert. denied*, —— U.S. ——, 113 S.Ct. 226, 121 L.Ed.2d 163 (1992).[2] Consistent with these cases, we hold that the Speedy Trial Act is not implicated when a defendant is detained on civil charges by the Immigration and Naturalization Service.

In addition to the requirement that the detention be pursuant to a criminal arrest for the provisions of the Act to apply, the arrest must also have been "in connection with" the charges contained within the later indictment. *Orbino*, 981 F.2d at 1036. "'The time limitation for indicting an accused does not begin to run if the accused is arrested for an unrelated offense.'" *United States v. Reme*, 738 F.2d 1156, 1162 (11th Cir.1984) (quoting *United States v. Brooks*, 670 F.2d 148, 151 (11th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1339 (1982)), *cert. denied*, 471 U.S. 1104, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985). Cepeda–Luna's initial detention on July 12 was wholly unrelated to the criminal charges contained in the October 18 indictment. The civil deportation was issued pursuant to 8 U.S.C. § 1251, which mandates deportation of aliens convicted of aggravated felonies and drug offenses.[3]

2. We have reached similar conclusions in cases involving a detained individual's "speedy trial" rights under the Sixth Amendment. In *United States v. Cordova*, 537 F.2d 1073 (9th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976), we found no Sixth Amendment violation where the defendant was held for fourteen months on state charges before the federal indictment for the same activity was handed down. *Id.* at 1075–1076. The court found that Sixth Amendment speedy trial rights were not activated until "a defendant is arrested and held to answer on a criminal charge, or the date on which he is formally charged, whichever is earlier." *Id.* at 1075.

The district court stated incorrectly that the *Cordova* court held the state arrest did not trigger the Speedy Trial Act. *Cepeda–Luna*, 781 F.Supp. at 686. *Cordova* examined only a defendant's speedy trial rights under the Sixth Amendment and not the Speedy Trial Act itself. *Cordova*, 537 F.2d at 1075 n. 1. However, we

find the *Cordova* court's reasoning under the Sixth Amendment equally applicable to the Speedy Trial Act.

3. The Attorney General has discretionary authority to detain an individual pending such deportation. 8 U.S.C. § 1252(a)(1) provides in part:

Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Except as provided in paragraph (2), any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (A) be continued in custody; or (B) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (C) be released on conditional parole.

Cepeda–Luna had been convicted of several felony drug offenses. In contrast, the indictment charged petitioner with illegal reentry, in violation of 8 U.S.C. § 1326, because he had reentered the United States after having been arrested and deported on October 22, 1986 and November 4, 1988. Thus, the reasons for the civil arrest were independent of the later criminal charges filed for illegal reentry.[4]

The mandatory dismissal provisions of the Speedy Trial Act, 18 U.S.C. § 3162(a)(1), also require a nexus between the arrest and subsequent criminal charges. We have stated that "[s]ection 3162(a)(1) must be read in connection with section 3162(b) to mean that a 30 day period commences to run as to *any charge on which that arrest was based.*" *United States v. Antonio,* 705 F.2d 1483, 1485 (9th Cir.1983) (emphasis added). Because petitioner's initial arrest was not "in connection with" the later criminal indictment, the Speedy Trial clock did not start until the arrest on federal criminal charges occurred.

█ Although we determine the Speedy Trial Act does not apply to civil deportation arrests, this rule is not absolute. The requirements of the Act would lose all meaning if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal criminal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act. If a court found evidence of such collusion, the provisions of the Act could be applied to state or civil detentions. *See Orbino,* 981 F.2d at 1036–1037. In *United States v. Cordova,* 537 F.2d 1073, 1076 (9th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976), we indicated speedy trial rights un-

der the Sixth Amendment might be so implicated even in a state arrest, if there was evidence of collusion between state and federal authorities.[5]

In *United States v. Okuda,* 675 F.Supp. 1552 (D.Haw.1987), the district court applied the provisions of the Speedy Trial Act to a civil detention under precisely these conditions. Okuda was arrested on administrative immigration charges as he arrived in Honolulu and was held in custody for purposes of both immigration and criminal investigations. *Id.* at 1553. Two days later he was criminally arraigned for using a false visa. He was indicted within thirty days of the arraignment but more than thirty days from the initial detention. In finding a violation of the Act, the court determined the administrative and criminal charges filed against Okuda were "identical" and that INS detention was used as a substitute for criminal arrest. *Id.* at 1555. The court found the Act to be triggered "where the government fully intended to charge the defendant with the identical criminal charge and purposefully utilized the I.N.S. to detain the defendant pending the filing of the criminal complaint." *Id.*

█ We agree with the reasoning of the *Cordova* and *Okuda* courts and hold the Speedy Trial Act can be applied to civil detentions which are mere ruses to detain a defendant for later criminal prosecution. However, there was no evidence of such a ruse in this case. The district court observed: "[T]here is no evidence in this case of government bad faith which would require a 'message' to deter future capricious conduct.... Further, at least part of the delay may be attributed to defendant's own conduct in light of his use of several aliases." *Cepeda–Luna,* 781 F.Supp at 687. We agree. Agent Vela testified that the

---

**4.** Because the arrest and indictment were for unrelated offenses, cases which have applied the Speedy Trial Act to situations where the criminal and civil charges arise from the same incident are inapposite. *See, e.g., United States v. Osunde,* 638 F.Supp. 171 (N.D.Cal.1986). The *Osunde* court specifically declined to consider that issue. *Osunde,* 638 F.Supp. at 175 n. 2. However, even if the criminal and civil offenses in this case stemmed from the same incident,

we would still decline to apply the Speedy Trial provisions to the civil detention.

**5.** However the *Cordova* court did not find evidence of such collusion:
"There is no indication that the state arrest and prosecution constituted a 'mere "temporary device" used to restrain appellant' until federal authorities might choose to prosecute." *Cordova,* 537 F.2d at 1076 (citations omitted).

delay was caused by a lack of communication between INS offices and Multnomah County and by the defendant's numerous aliases, and stated that if he had known Cepeda–Luna had been released from state custody on July 12, he would have brought federal criminal charges at that time. Agent Vela also testified that steps were being taken to eliminate such delays in the future. Thus, there is no evidence of collusion between federal criminal and civil authorities which would mandate the application of the provisions of the Act to civil detentions.

This court is not unsympathetic to the plight of individuals who are unnecessarily detained for extended periods because of federal incompetence or oversight. However, the Speedy Trial Act is not the appropriate remedy for rectifying such violations when they occur in a civil context. Our refusal to apply the provisions of the Speedy Trial Act to civil deportation detentions, however, does not mean that immigration officials possess unfettered discretion to incarcerate deportable aliens. Detainees like Cepeda–Luna may still request relief in federal court from extended deportation detentions by utilizing the habeas corpus proceedings in 8 U.S.C. § 1252(a)(1).[6] That remedy, and not the Speedy Trial Act, will increase the efficiency of civil authorities. Applying the Speedy Trial Act in cases such as this would do nothing more than punish criminal authorities for the delays of civilian immigration officials.

## III

### FED. R. CRIM. P. 5(a)

■ Appellant's final brief argument that Fed.R.Crim. P. 5(a) mandates dismissal in this case is frivolous. The initial provisions of that rule require a defendant who has been arrested to be brought before a magistrate "without unnecessary delay." Petitioner's only argument is that dismissal for violating this rule has been *contemplated* by the courts, *United States v. Jernigan*, 582 F.2d 1211, 1213–1214 (9th Cir.), *cert. denied*, 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978), and he encourages us to dismiss this case because of the "102 day delay in this case." *Jernigan* "contemplated" dismissal, however, for delays in a federal *criminal* arrest. We have determined there was no unnecessary delay in processing the criminal aspects of this case. The provisions of Rule 5, which require *inter alia* the appointment of counsel and the holding of preliminary examinations, are inapplicable to civil deportation arrests. We decline to apply Fed.R.Crim. P. 5(a).

## IV

### CONCLUSION

We hold that absent a determination that the civil detention is a mere ruse to detain a defendant pending criminal prosecution, the provisions of the Speedy Trial Act do not apply to civil deportation detentions by the INS which result in later criminal prosecutions.[7] Therefore the district court's decision is AFFIRMED.

---

**6.** 8 U.S.C. § 1252(a)(1) provides in relevant part: Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circum-

stances in the case of any alien to determine deportability.

**7.** Because we determine the district court correctly held the Speedy Trial Act was not implicated in this case, we decline to review the district court's determination that if dismissal in this case were warranted, it would dismiss this case without prejudice.