# United States Court of Appeals
## For the First Circuit

---

Nos.    00-1461
     00-1491

UNITED STATES OF AMERICA,

Appellee,

v.

PEDRO LUIS TEJADA,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, <u>U.S. District Judge</u>]
[Hon. Carmen Consuelo Cerezo, <u>U.S. District Judge</u>]

---

Before

Torruella, <u>Circuit Judge</u>
Coffin and Campbell, <u>Senior Circuit Judge</u>.

---

    <u>Raymond L. Sanchez Maceira</u>, by Appointment of the Court, for appellant.
    <u>Jared Lopez</u>, Assistant U.S. Attorney, with whom <u>Guillermo Gil</u>, United States Attorney, <u>Jorge E. Vega-Pacheco</u>, Assistant U.S. Attorney, and <u>Thomas F. Klumper</u>, Assistant U.S. Attorney, were on brief, for appellee.

June 27, 2001

**COFFIN, <u>Senior Circuit Judge</u>.** Appellant Pedro Luis Tejada seeks dismissal of his indictment for illegal reentry into the United States, <u>see</u> 8 U.S.C. § 1326(b)(2), on the ground that the government failed to bring him before a magistrate judge within 48 hours following his warrantless arrest, in violation of Federal Rule of Criminal Procedure 5(a).[1] The district court concluded that Rule 5(a) was inapplicable to Tejada's circumstances because he was arrested for an immigration-related "status offense" – and thus was civilly detained – rather than for a general crime whose elements do not include alien status. The district court ruled correctly, and we therefore affirm the denial of appellant's motion to dismiss. We also reject Tejada's related contention that the district court improperly revoked his term of supervised release.

## I. <u>Factual Background</u>

---

[1] In relevant part, Rule 5(a) states:

> Except as otherwise provided in this rule, an officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge or [other authorized judicial officer].

The requirement that such an appearance generally take place within 48 hours stems from the Fourth Amendment, not Rule 5(a), but the two contexts typically are treated alike. <u>See</u> <u>United States</u> v. <u>Encarnacion</u>, 239 F.3d 395, 398 n.2 (1st Cir. 2001).

In February 1998, appellant was deported to the Dominican Republic following his conviction on a federal drug charge. Ten months later, on December 20, he flew into Carolina, Puerto Rico, and was detained by inspectors for the Immigration and Naturalization Service (INS) on suspicion that he had unlawfully entered the United States. On December 22, during an interview with INS Inspectors Jerry Morales and Fernando Ruz, appellant acknowledged his previous conviction and deportation. Morales ordered appellant's immigration records (the "A File"), which contained documents confirming the earlier deportation proceedings, and upon receiving the file, he referred the case to the U.S. Attorney's office for consideration of criminal charges.

On January 5, 1999, sixteen days after he first was detained, appellant was brought before a magistrate judge for an initial appearance.[2] He subsequently was indicted on one count of violating 8 U.S.C. § 1326(b)(2), which bars unauthorized reentry into the United States by an individual previously deported for an aggravated felony. After unsuccessfully seeking dismissal based on a violation of Rule 5(a), appellant pled

_____

[2] In an affidavit, INS Inspector Morales stated that he did not receive the A File until "about January 5, 1999." It thus appears that appellant was brought before the magistrate judge on the same day, or shortly after, Morales obtained the documentary proof of his prior deportation.

-4-

guilty and was sentenced.  In a related proceeding, the district court revoked the supervised release term that appellant had received in the drug case that had triggered his deportation. He was sentenced to a six-month term in lieu of supervised released, to be served consecutively to the fifty-one month sentence imposed for the illegal reentry.

On appeal, appellant renews his challenge under Rule 5(a), claiming that the court erred in refusing to dismiss the indictment with prejudice.  In addition, because revocation of his supervised release term resulted from his conviction under § 1326(b)(2), he claims that the release term must be reinstated.  For reasons we explain below, both contentions are unavailing.

## II. <u>Discussion</u>

As his counsel acknowledged at oral argument, Tejada's appeal lost most of its force when a panel of this court ruled earlier this year that § 1326(b)(2) is a status offense that does not trigger the protections of Rule 5(a) until the criminal process has been initiated against the detained alien.  <u>See</u> <u>United States</u> v. <u>Encarnacion</u>, 239 F.3d 395, 399 (1st Cir. 2001); <u>see</u> <u>also</u> <u>United States</u> v. <u>Noel</u>, 231 F.3d 833, 837 (11th Cir. 2000) (per curiam); <u>United States</u> v. <u>Cepeda-Luna</u>, 989 F.2d 353, 358 (9th Cir. 1993).  The  requirement that a magistrate evaluate

-5-

his detention within 48 hours of his arrest is therefore inapplicable. Instead, his detention was civil in nature and governed by 8 U.S.C. § 1357(a)(2), see Encarnacion, 239 F.3d at 398-400, which empowers INS officials to effect a warrantless arrest of

> any alien who in [their] presence or view is entering
> or attempting to enter the United States in violation
> of any law or regulation made in pursuance of law
> regulating the admission, exclusion, expulsion, or
> removal of aliens . . . .

An alien detained under that provision must be taken "without unnecessary delay for examination before an officer of the [INS] having authority to examine aliens as to their right to enter or remain in the United States." Id.[3] Thus, to comply with the applicable statute, the arresting authorities needed to bring appellant to an IRS examining officer, not a magistrate, "without unnecessary delay."

Appellant was interviewed two days after his arrest by INS Inspectors Morales and Ruz. Although he baldly asserts on

---

[3] Another subsection of § 1357 allows INS officers to make arrests for immigration-related felonies and requires that the alien be taken promptly before "the nearest available officer empowered to commit persons charged with offenses against the laws of the United States . . . ." 8 U.S.C. § 1357(a)(4). Courts have read subsection (a)(2) to apply to arrests of aliens for status offenses and subsection (a)(4) to apply to arrests of aliens for other crimes. Encarnacion, 239 F.3d at 398. In turn, Rule 5(a) is considered applicable to subsection (a)(4) detainees, but not to those detained under subsection (a)(2). Id. at 398-99.

appeal that this timing did not comply with the statute and violated his due process rights, he failed to make that claim to the district court, see District Court Opinion at 6, or to develop it on appeal. We therefore need not address the specific question whether appellant's appearance before the INS occurred "without unnecessary delay" as mandated by § 1357(a)(2). We think it beyond debate, however, that the period at issue – approximately the same time permitted by Rule 5(a)[4] – did not constitute a deprivation of rights that warrants our intervention, particularly in the absence of a preserved claim.

We nonetheless wish to note that aliens arrested for status offenses are not without protection from excessively long detentions. Where the government uses civil detention as a pretext for holding an individual while it investigates other possible criminal charges, Rule 5(a) may be deemed applicable, see Encarnacion, 239 F.3d at 399-400; cf. Noel, 231 F.3d at 836 ("Although routine INS detentions incident to deportation do not trigger the Speedy Trial Act, a contrary result may be warranted when detentions are used by the government, not to effectuate deportation, but rather as 'mere ruses to detain a defendant for

---

[4] At argument, the government indicated that appellant was arrested in the early morning hours of December 20 and brought before the INS officers later in the morning of December 22, several hours beyond the 48-hour time period.

-7-

later criminal prosecution.'" (quoting <u>Cepeda-Luna</u>, 989 F.2d at 357)); <u>United States</u> v. <u>De La Pena-Juarez</u>, 214 F.3d 594, 598 (5th Cir. 2000) (applying Speedy Trial Act only "where the defendant demonstrates that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution"); <u>Cepeda-Luna</u>, 989 F.2d at 358.[5] In addition, where the delay in bringing the alien before a magistrate is so unnecessarily long that it effects a constitutional deprivation, the alien may petition for habeas corpus relief under 28 U.S.C. § 2241, <u>see</u> <u>Encarnacion</u>, 239 F.3d at 399 n.4; <u>Cepeda-Luna</u>, 989 F.2d at 358.[6]

---

[5] We note that appellant did not raise a claim under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174. The Act provides, in pertinent part:

> Any information or indictment charging an individual with the commission of an offense shall be filed within 30 days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b). Some courts have held that the clock starts to run from the date of the civil arrest when the administrative and criminal charges against the defendant are identical. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Restrepo</u>, 59 F. Supp. 2d 133, 137 (D. Mass. 1999); <u>United States</u> v. <u>Vasquez-Escobar</u>, 30 F. Supp.2d 1364, 1367 (M.D. Fla. 1998); <u>United States</u> v. <u>Okuda</u>, 675 F. Supp. 1552, 1555 (D. Haw. 1987).

[6] Appellant's lawyer asserted at oral argument that it would be difficult for an alien to obtain counsel to bring such claims because there is no right to counsel in civil habeas proceedings. Not all aliens will lack resources, however, and those unable to hire counsel may, as in other settings, seek pro bono representation. In any event, it is our hope that what we say here about the appropriate length of civil detentions, <u>see</u>

In this case, there is no evidence that appellant initially was detained for any reason other than routine inquiry into his suspicious immigration status – a civil matter, see Encarnacion, 239 F.3d at 399 – and his confession two days later to immigration officials confirmed his unlawful status.  At that point, appellant's circumstances were in many respects identical to those we described in Encarnacion:

> His interview with [INS Officers Ruz and Morales], mandated by the "taken without unnecessary delay . . . before an officer of the [INS]" language of § 1357(a)(2), amplified the INS's suspicions that [appellant's] attempted entry was unlawful.  But only after receiving the INS file on [appellant] containing the prior deportation order had  [Ruz and Morales] secured the "probable cause" necessary to initiate the criminal process under the applicable law and regulations. . . .  Consequently, [appellant's] case did not become criminal until [Morales's] contact with the U.S. Attorney, and after that point, [appellant] was brought expeditiously before the federal magistrate judge.

Id. (emphasis in original).

We acknowledge that appellant's situation differs from Encarnacion's in that it took twice as long to transmit appellant's file to Inspector Morales as the period we

---

infra pp. 7-8, will prompt more expeditious action by the INS. Moreover, we agree with the district court that in cases of "lengthy yet lawful civil detention that may arise from inefficient investigation by immigration officers, defendant may request upon sentencing (if he is convicted or enters a guilty plea) that 'any prejudice traceable to the pretrial detention [] be mitigated by giving him credit for time served on the INS detainer.'" District Court Opinion at 13 (citation omitted).

questioned as unnecessarily lengthy in <u>Encarnacion</u>, <u>see</u> <u>id.</u> ("[P]rompt action by INS officials (and the availability of today's parcel-delivery services) should make it possible to transmit files between INS offices more quickly than seven days."). Although the days at issue here spanned the winter holidays, when greater delay is unsurprising, such a lapse of time at least borders on excessive in light of the easy access in most locations to overnight delivery service.

Yet, in the absence of any evidence that the government deliberately employed delaying tactics for an impermissible purpose, we have no basis in these circumstances for considering the matter further. On the issue before us – whether the district court wrongly refused to dismiss appellant's case based on a violation of Rule 5(a) – we find no error.[7] That conclusion also disposes of appellant's challenge to withdrawal of his supervised release term, which is based solely on the invalidity of his conviction under § 1326(b)(2).

<u>The judgment of the district court is therefore affirmed.</u>

---

[7] We note that this court has not yet decided "whether Rule 5(a) can ever be a basis for dismissal of an indictment absent evidence of unwarranted interrogation during the period of detention." <u>Encarnacion</u>, 239 F.3d at 400 n.5.