**UNITED STATES of America,**

v.

**Santos Sixto VASQUEZ–ESCOBAR.**

**No. 98–62–CR–FTM–17D.**

United States District Court,
M.D. Florida,
Fort Myers Division.

Oct. 30, 1998.

Martin Der Ovanesian, Federal Public Defender's Office, Ft. Myers, FL, for Defendant.

William Zloch, U.S. Atty's Office, Middle District of Florida, Ft. Myers, FL, for U.S.

## MEMORANDUM AND ORDER

ALDRICH, District Judge.

This case presents the limited question of whether the federal government may detain an alien for five months under the guise of a civil immigration statute that provides for the detention of aliens who have illegally reentered the United States after a prior order of deportation, while it awaits evidence with which to indict him on an identical criminal charge. The Court holds that it cannot.

### I. Facts

On or about October 18, 1996, Santos Sixto Vasquez–Escobar ("Vasquez–Escobar"), a citizen of El Salvador, was arrested on charges unknown to the Court and deported from the United States. He reentered the

United States on an unknown date, was arrested by the State of Florida on or about September 7, 1997 for a probation violation, and was placed in Collier County Jail. Apparently, the State notified the Immigration and Naturalization Service ("INS") that it was holding Vasquez–Escobar.

The INS placed a detainer on Vasquez–Escobar. On September 10, 1997, INS border patrol agent Ernest Baron completed an INS Form I–247 entitled "Immigration Detainer–Notice of Action", that indicated (1) that an "[i]nvestigation has been initiated to determine whether [Vasquez–Escobar] is subject to removal from the United States"; and (2) that "[d]eportation or removal from the United States has been ordered." By September 15, 1997, the INS "began to prepare the matter for the United States Attorney Office so that a decision could be made whether to accept the matter for prosecution." (Pl. Second Amended Response) (unpaginated).

On December 31, 1997, the State dismissed its charges against Vasquez–Escobar.[1] However, he remained in custody because of the INS detainer. The government alleges that he was placed in the Krome Service and Processing Center ("Krome Center")[2] on INS civil deportation charges on January 1, 1998. Vasquez–Escobar alleges that he was not placed in the Krome Center but instead remained in the Collier County Jail.

On January 2, 1998, INS officer Bruce Busby completed an INS Form I–213 entitled "Record of Deportable/Inadmissible Alien" that indicated that Vasquez–Escobar had a criminal record and had previously been deported. The form also stated "Status When Found REENTRY" and the following:

Barron was notified by Deputies in the jail that the sujbect [sic] had been deported and was back in Jail. Barron obtained the Alien file from Miami District Records

---

1. Vasquez–Escobar alleges that the State charged him with two counts of violating his probation. He alleges that on December 19, 1997, the State dismissed one of his charges, and he plead guilty to the other charge in exchange for time served. The government alleges only that Vasquez–Escobar "was released" on these charges on December 31, 1997. In reviewing the motion to dismiss the indictment in the light most favorable to

the government, the Court has adopted the government's version of the facts.

2. The Krome Center is an INS detention facility. *See Problems Persist at Krome, Feds Say Some Improvement Noted At Detention Center,* Florida Today, Sept. 16, 1997, *available in* 1997 WL 14133519.

and turned the case over to BPA [border patrol agent] Busby.

Subject was in custody of Collier County Sheriff's Office for a violation of probation. Subject was fingerprinted and interviewed on 9–17–97.[3] He was given an I–214 advisment [sic] of rights in to Spanish read and sign. He read the form and stated he understood and would talk to BPA Busby. He stated he was deported in October of 1996. He stated he did not reenter until September 3, 1997. He said he reentered the United States by wading the river near Laredo, Texas. He then made his way to Houston, Texas and then to Florida. He stated he was then arrested on a probation violation. He stated he did not get charged with any other crime. He stated he reentered the United States even though he knew he would be prosecuted because his wife and family are here in Florida. He stated he has had porblems [sic] with the government in El Salvador also.

CIS and NCIC checks[4] revealed the prior deport and an extensive criminal record. An I–247 was placed with the Collier County Jail. Prosecution is being reviewed by AUSA in Ft. Myers, Fl.

The United States Attorney's Office accepted this case for prosecution on March 18, 1998. On May 27, 1998, Vasquez–Escobar was indicted by a federal grand jury in the Middle District of Florida on one count of illegally reentering the United States after deportation without the permission of the Attorney General of the United States, in violation of 8 U.S.C. § 1326(a).[5] This is the only count in the indictment.

The government alleges that it did not indict Vasquez–Escobar until May, 1998, be-

cause it did not learn until April 30, 1998, "the name of the [detention enforcement officer] who executed and served form I–205", a warrant for deportation, on Vasquez–Escobar, without which it "would not be able to establish that [Vasquez–Escobar] had been previously deported from the United States" and "would not be able to prove one of the essential elements against [Vasquez–Escobar] for the crime charged." (Pl. Second Amended Response). Thus, according to the government, "*any preaccusation delay can be attributed to establishing the suspect's guilt beyond a reasonable doubt.*" (Id.) (emphasis added).

On June 16, 1998, Vasquez–Escobar was served with a federal warrant and had an initial appearance before a magistrate judge in the Southern District of Florida. On June 19, 1998, Vasquez–Escobar appeared before the magistrate judge for a removal and detention hearing. The magistrate judge ordered him detained as a danger to the community; he waived his right to removal proceedings and was removed to the Middle District of Florida.

He had an initial appearance before a magistrate judge in the Middle District of Florida on June 24, 1998 and was arraigned on July 7, 1998. On July 8, 1998, the government presented him with a plea agreement. On July 30, 1998, he filed a motion to dismiss the indictment, alleging that his detention violated either Federal Rule of Criminal Procedure 5(a) or Rule 9(c)(1), or both, and the Speedy Trial Act. He does not challenge the right of the government to deport him.

On August 7, 1998, this Court scheduled a hearing on the motion to dismiss, at which the government informed the Court, without providing any supporting case law or authori-

---

**3.** The form originally indicated that Vasquez–Escobar was fingerprinted and interviewed on 9–15–97 but a "7" was handwritten over the "5".

**4.** The record does not indicate the meaning of these abbreviations.

**5.** 8 U.S.C. § 1326(a) provides:

**§ 1326. Reentry of removed alien; criminal penalties for reentry of certain removed aliens** (a) Subject to subsection (b) of this section, any alien who—
(1) has been denied admission, excluded, deported, or removed or has departed the United

States while an order of exclusion, deportation, or removal is outstanding, and thereafter, (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

ty, that it was detaining Vasquez–Escobar pursuant to 8 U.S.C. § 1231(a)(5). The Court ordered the parties to provide briefs concerning § 1231(a)(5), the Speedy Trial Act, and the Due Process Clause of the Fifth Amendment within five days.

## II. The Speedy Trial Act

Title 8 U.S.C. § 1231(a)(5), § 241(a)(5) of the Immigration and Nationality Act ("INA"), as amended, provides for the removal of an alien under a reinstated order of removal, and states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, *the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.*

(emphasis added). The government argues that § 241(a)(5) provides it the authority to detain Vasquez–Escobar for five months prior to indictment, as he was not formally "arrested" on federal criminal charges, but instead was detained civilly pursuant to this statute.

■ Vasquez–Escobar alleges that he was "arrested" by the federal government when it continued to detain him specifically for illegally reentering the United States, after the State of Florida dismissed its charges in December, 1997, and then indicted him on an identical criminal charge of illegally reentering the United States. As he was not indicted until May, 1997, he alleges that his nearly five-month detention prior to indictment violates the Speedy Trial Act ("Act"), 18 U.S.C. § 3161(b), that provides in pertinent part:

> ... Any information or indictment charging an individual with the commission of

any offense shall be filed within 30 days from the date on which such individual was arrested or served with a summons *in connection with such charges.*

(emphasis added).

The Court finds Vasquez–Escobar's argument persuasive. Vasquez–Escobar was detained after December 31, 1997, pursuant to an INS detainer hold for illegally reentering the United States. He was deemed deportable, and under § 241(a)(5), has no right to appeal this decision. Thus, his order of deportation is final.

As his order of deportation is final, the government admits that it was not holding him to effectuate his deportation under § 241(a)(5). Instead, it held him after December, 1997, for illegally reentering the United States, specifically to provide the government the time and evidence necessary to establish his "guilt beyond a reasonable doubt" for an identical criminal charge of illegally reentering the United States under 8 U.S.C. § 1326(a).[6]

As such, his "civil" detention after December, 1997, amounted to an arrest "in connection with such charges" alleged in the indictment, and the speedy trial clock began to run on this charge after December 31, 1997. *See United States v. Okuda*, 675 F.Supp. 1552 (D.Haw.1987) ("The critical issue is the substance of the restraint, not the semantical terminology for the arrest"); *United States v. Osunde*, 638 F.Supp. 171 (N.D.Cal.1986) ("To the extent it is asserted that a proper interpretation of the term 'arrest', as contemplated under the Speedy Trial Act, would condone continuous detention without charge, this Court declines and refuses to make such an illogical inference. It is the restraint on individual liberty, not merely the procedural stagnation following the filing of formal charges, which Congress intended to protect against when it passed the Act").[7]

---

**6.** A Ninth Circuit case, not cited by the government, held that an INS civil detention and subsequent criminal indictment does not violate the Speedy Trial Act absent evidence of pretext or collusion between government prosecutors and the INS. *See United States v. Pena–Carrillo*, 46 F.3d 879 (9th Cir.), *cert. denied*, 514 U.S. 1122, 115 S.Ct. 1990, 131 L.Ed.2d 876 (1995). However, the *Pena–Carillo* Court explicitly stated that the "evidence cited by [the alien] provides neither direct nor indirect support for his conten-

tion that prosecutors conspired with INS to extend his detention until an indictment could be returned" and no evidence existed that the United States Attorney's office had communicated with the INS. *Id.* at 883.

**7.** The government argues only that the preaccusation delay does not violate Vasquez–Escobar's rights, absent a showing of intentional delay by the government to gain a tactical advantage. *See United States v. Thomas*, 62 F.3d 1332, 1339

As the government failed to indict Vasquez–Escobar within thirty days of his arrest, this Court must dismiss the indictment. This Court has discretion to dismiss the complaint with or without prejudice and the Eleventh Circuit does not perceive a preference for either form of dismissal. *United States v. Derose,* 74 F.3d 1177, 1182 (11th Cir.1996); *United States v. Miranda,* 835 F.2d 830, 834 (11th Cir.1988). The Court must consider (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of reprosecution on the administration of the Act and the administration of justice. 18 U.S.C. § 3162(a)(1).[8]

This Court will assume, although not argued by the government, that a violation of 8 U.S.C. § 1326(a) is serious. "Where the crime charged is serious, the court should dismiss only for a correspondingly severe delay." *United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir.1984). In this case, almost five months passed between the time that the government admits it was holding Vasquez–Escobar merely to establish his guilt under 8 U.S.C. § 1326(a) and his indictment. Such "an extensive postponement certainly militates toward" dismissal with preju-

dice. *Id.; Osunde,* 638 F.Supp. at 175 ("[T]he excessive delay of nearly four months militates in favor of a dismissal with prejudice").

The facts and circumstances surrounding the delay also favor dismissal with prejudice. First, the delay is wholly the fault of the government. Second, given the length of the delay, the government must provide "[s]ome affirmative justification" to "warrant a dismissal without prejudice." *Russo,* 741 F.2d at 1267. Here, however, the government has failed to provide such justification, since it alleges only that it delayed Vasquez–Escobar's indictment while it awaited evidence from the INS with which to indict him, without providing any reason as to why it took an entire five months to do so.

The impact of reprosecution on the administration of the Act and the administration of justice also favors dismissal with prejudice. The government argued in a pre-hearing conference before this Court that Vasquez–Escobar's indictment will serve the public interest by deterring him and others from illegally reentering this country in the future. However, as Vasquez–Escobar will still be deported regardless of whether the indict-

---

(11th Cir.1995); *United States v. Reme,* 738 F.2d 1156 (11th Cir.1984), *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985). These cases are not persuasive, as they do not concern persons "civilly" detained and then criminally indicted on identical charges. *See Reme,* 738 F.2d at 1162 (Case in which a group of Haitian refugees were detained as illegal aliens for almost nine months prior to indictment. The aliens, however, were indicted on federal charges of (1) conspiring to bring illegal aliens into the United States; and (2) transporting or attempting to transport aliens into the country. The Eleventh Circuit held that the Speedy Trial Act did not start running upon the initial detention because the arrest was not "in connection with" the charges in the indictment.); *Okuda,* 675 F.Supp. at 1555 (similarly distinguishing *Reme* ).

**8.** Section 3162(a)(1) provides:

If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without

prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of reprosecution on the administration of this chapter and on the administration of justice.

As this section states that it concerns the case "of any individual against whom a complaint has been filed", the Eleventh Circuit has held that it "establishes that Congress intended the provisions of the Act to apply only if an individual was formally charged with an offense" and that no formal arrest occurred in a case where a defendant was temporarily taken into custody and later released. *United States v. Sayers,* 698 F.2d 1128, 1131 (11th Cir .1983). *Sayers,* however, did not involve the situation at hand where a defendant is placed under continuous physical detention. Moreover, the *Sayers* Court implied that such continuous detention would implicate the Act, stating that "The district court logically concluded that *until an individual is being held, either physically or legally, to answer to a charge,* there is no circumstance upon which the purpose of the Act could work." *Id.* (emphasis added). As Vasquez–Escobar has been placed under a continuous physical restraint to answer to a charge, § 3162(a)(1) is applicable. *Okuda,* 675 F.Supp. at 1553; *Osunde,* 638 F.Supp. at 174.

ment is dismissed with or without prejudice, justice will be served to the extent that he "will not be allowed to continue enjoying the benefits of, and the protections concurrent with, residence in the United States." *Osunde,* 638 F.Supp. at 176. Moreover, "dismissal without prejudice can be viewed as frustrating the Act's mandate of swift prosecution...." *Russo,* 741 F.2d at 1267.

Thus, although the Court assumes that the crime charged is serious, the length of the delay, the failure of the government to provide an affirmative justification for the delay, and the effect of reprosecution on the administration of the Act and the administration of justice, all favor dismissal with prejudice.

## IV. Due Process

Even if the five-month delay does not violate the Act, it violates the due process clause of the Fifth Amendment to the United States Constitution.

### A. Deportation and Exclusion

"The immigration laws create two types of proceedings in which aliens can be denied the hospitality of the United States: deportation hearings and exclusion hearings." *Landon v. Plasencia,* 459 U.S. 21, 25, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). The "deportation hearing is the usual means of proceeding against an alien already physically in the United States, and the exclusion hearing is the usual means of proceeding against an alien outside the United States seeking admission." *Id.*

■ Aliens subject to deportation have rights under the Fifth Amendment; aliens subject to exclusion do not. *Plyler v. Doe,* 457 U.S. 202, 210, 212 n. 12, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) ("[W]e have clearly held that the Fifth Amendment protects aliens whose presence in this country is unlawful from invidious discrimination by the Federal Government" and noting the difference between exclusion and deportation proceedings); *Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896) ("[I]t must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth Amendment and the Sixth Amendment], and that even aliens shall not be held to answer for a capital or other infamous crime, unless on the presentment of an in-

dictment of a grand jury, nor be deprived of life, liberty, or property without due process of law"); *Garcia–Mir v. Meese,* 788 F.2d 1446, 1450 (11th Cir.) ("[A]liens once in the United States have been extended a plethora of important rights"), *cert. denied sub nom., Ferrer–Mazorra v. Meese,* 479 U.S. 889, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986).

Vasquez–Escobar is an alien subject to deportation. The government does not dispute this.

### B. Due Process

The due process clause of the Fifth Amendment provides that "No person shall ... be deprived of life, liberty or property without due process of law." Vasquez–Escobar has a liberty interest in remaining free from detention. *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause...."). The government does not dispute this.

[6] The due process clause requires that persons may not be punished "without providing the safeguards which must attend criminal prosecution." *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 184, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *see also Wong Wing,* 163 U.S. at 238, 16 S.Ct. 977. The government argues that Vasquez–Escobar's detention does not amount to "punishment" because it was mere regulation permissible under 8 U.S.C. § 1231(a)(5). The Supreme Court has on several occasions considered "whether a restriction on liberty constitutes impermissible punishment or permissible regulation." *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). This Court must first examine the legislative intent of § 241(a)(5) to determine whether Congress formulated the detention provision as punishment; if Congress did not do so, then the Court must "look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective." *Bell v. Wolfish,* 441 U.S. 520, 539 n. 20, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Congress did not intend detention pursuant to § 241(a)(5) as punishment. In passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Act that added § 241(a)(5) to the INA, Congress intended "to reform the legal immigration system and facilitate *legal* entries into the United States." H.R.CONF.REP. No. 104–828 (1996).

Moreover, the Supreme Court has long–recognized that the government may detain aliens pending deportation:

> We think it clear that detention, or temporary confinement, *as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens* would be valid. Proceedings to exclude or expel would be vain if those accused could not be held in custody *pending the inquiry into their character and while arrangements were being made for their deportation.*

*Wong Wing v. United States,* 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (emphasis added); *Salerno,* 481 U.S. at 748, 107 S.Ct. 2095 ("[W]e have found no absolute constitutional barrier to detention of potentially dangerous resident aliens *pending deportation proceedings*") (emphasis added); *Carlson v. Landon,* 342 U.S. 524, 534, 538, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (Aliens "remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders.... Detention is necessarily a part *of this deportation procedure*") (emphasis added); *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382, 1387 (10th Cir.1981) ("Detention pending deportation seems properly analogized to incarceration pending trial or other disposition of a criminal charge, and is, thus, justifiable only as a necessary, temporary measure").

Deportation, and, this Court will infer, detention incident to deportation,

> .... is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering and remaining unlawfully in this country is itself a crime.... The deportation hearing looks prospectively to the [alien's] right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the [alien's] right to remain.... In short, a deportation hearing is intended to provide a streamlined determination of eligibility to remain in this country, nothing more. The purpose of deportation is not to punish past transgressions but rather to put an end to a continuing violation of the immigration laws.

*INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). On this basis, courts have upheld the civil detention of aliens where the detention was incident to deportation. *See, Doherty v. Thornburgh,* 943 F.2d 204 (2nd Cir.1991) (the detention was incident to the alien's appeal of his removal), *cert. dismissed sub. nom., Doherty v. Barr,* 503 U.S. 901, 112 S.Ct. 1254, 117 L.Ed.2d 485 (1992).

■ By contrast, Vasquez–Escobar's order of deportation is final. Although this Court does not dispute the government's right to detain him for a reasonable period while it arranges for his deportation, the government does not argue that it detained him for five months to deport him or to effectuate Congress' regulatory objective of § 241(a)(5).[9] Instead, the government admits that it detained him to establish his guilt under 8 U.S.C. § 1326(a). As such, the government's express purpose for detaining Vasquez–Escobar is "to punish past transgressions." *Lopez–Mendoza,* 468 U.S. at 1039, 104 S.Ct. 3479; *Bell v. Wolfish,* 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]' ") (citation omitted); *see also, Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) ("At the least, due process requires that the nature and duration of commitment bear some rea-

---

**9.** This case does not involve the question of whether the deportation proceeding itself is puni- tive.

sonable relation to the purpose for which the individual is committed").

Even if the government's express purpose is not punishment, the Supreme Court has articulated a test to determine whether a governmental act is punitive in nature:

Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant, and may often point in differing directions.

*Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

Detaining Vasquez–Escobar for five months merely to establish his guilt under 8 U.S.C. § 1326(a) is punitive: This governmental act involves an affirmative disability or restraint analogous to imprisonment, *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); such governmental action is historically viewed as punishment, *Wong Wing v. United States,* 163 U.S. 228, 234, 16 S.Ct. 977, 41 L.Ed. 140 (1896), Gerald Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens,* 98 Colum.L.Rev. 961, 984 (1998) ("Detention by executive authority, after all, poses the oldest and perhaps the greatest threat to liberty under law"); detaining Vasquez–Escobar to obtain a criminal conviction furthers the goals of retribution and deterrence, as it seeks to "affix culpability for prior criminal conduct", *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 2082, 138 L.Ed.2d 501 (1997); and a five-month detention clearly is excessive in relation to the need of the government to obtain evidence, especially absent any explanation from the government as to why it required five months to do so.

Not all detention is punishment. *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (holding that pretrial detention under the Bail Reform Act of 1984 did not violate the due process clause). Nevertheless, the circumstances of this case demonstrate that Vasquez–Escobar's detention is punitive in nature. *See, Rodriguez–Fernandez,* 654 F.2d at 1387 ("[D]eportable aliens in custody more than a few months must be released because such detention has become imprisonment"); *Petition of Brooks,* 5 F.2d 238, 239 (D.Mass.1925) (The alien "is entitled to be deported, or to have his freedom").

The government punished Vasquez–Escobar for five months "without providing the safeguards which must attend criminal prosecution." *Mendoza–Martinez,* 372 U.S. at 184, 83 S.Ct. 554. As such, the government violated his rights under the due process clause of the Fifth Amendment.

The motion to dismiss the indictment is granted.

## V.

The Court grants the motion to dismiss the indictment. The government has thirty days to show cause why Vasquez–Escobar should not be deported immediately.

IT IS SO ORDERED.