UNITED STATES of America

v.

Jose Alberto RESTREPO,
a/k/a Juan Gonzalez.

No. Cr 98–10377–MLW.

United States District Court,
D. Massachusetts.

July 1, 1999.

Peter C. Horstmann, Bailey, Fishman & Leonard, Boston, MA, for Jose Alberto Restrepo.

Timothy Q. Feeley, U.S. Attorney's Office, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

WOLF, District Judge.

On September 28, 1998, the defendant Jose Restrepo was arrested by the Immigration and Naturalization Service ("INS") for having reentered the United States illegally after having been deported. On December 2, 1998, he was indicted for the same offense.

On June 9, 1999, the court conducted the first of two hearings concerning Restrepo's motion to dismiss with prejudice the indictments against him for illegal reentry

by an alien in violation of 8 U.S.C. § 1326.[1] At the June 9, 1999 hearing, the defendant argued that the government's failure to indict him within 30 days of his arrest by the INS violated the Speedy Trial Act, 18 U.S.C. §§ 3161(b)[2] and 3162(a)(1).[3] The government responded that the INS arrest did not trigger the Speedy Trial Act because the detention of the defendant was only for the purpose of arranging deportation. According to the government, the Speedy Trial Act was not violated because the defendant was indicted within 30 days of his criminal arrest for illegal reentry on November 23, 1998.

At the June 9, 1999 hearing, the court described its preliminary view of the legal framework for analyzing the Speedy Trial Act issue. The court stated that it seemed that while ordinarily a civil detention does not trigger the Speedy Trial Act, where the detention is used to further a criminal investigation based on the same offense, the Speedy Trial Act's 30–day limit begins running at the time of the INS arrest. The court suggested that the INS has an obligation to act with all deliberate speed to deport a detained alien from the United States. The Speedy Trial Act, therefore, may be triggered by an INS arrest when-

ever the INS detains an alien longer than is necessary to facilitate deportation in order to develop an indictable case for the same conduct.

The court continued the hearing to June 17, 1999 to permit the government to present witnesses from the INS who could testify concerning the issues that the court identified as relevant. However, at the June 17, 1999 hearing, rather than continuing it's opposition to the defendant's motion, the government moved for leave to dismiss the indictments with prejudice. For the reasons stated below, the government's motion has been allowed.

## I. FACTS

On May 15, 1997, the defendant was deported from the United States to Colombia. Affidavit of Special Agent Ronald MacAllister ("MacAllister Aff.") at ¶ 6; Warrant of Deportation, Ex. A of Criminal Complaint.

On September 28, 1998, the defendant was arrested by INS agents, pursuant to section 241(a)(5) (" § 241(a)(5)") of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(5),[4] and 8 CFR 241.8,[5] for

---

1. 8 U.S.C. § 1326, entitled "Reentry of removed aliens," provides in pertinent part that:

    (a) In general
    Subject to subsection (b) of this section, any alien who—
    (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
    (2) enters, attempts to enter, or is at any time found in, the United States . . . shall be fined . . . or imprisoned . . . or both.

2. 18 U.S.C. § 3161(b) provides in pertinent part that:

    Any information or indictment charging an individual with the commission of an offense shall be filed within 30 days from the date on which such individual was arrested or served with a summons in connection with such charges. . . .

3. 18 U.S.C. § 3162(a)(1) provides:

    If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within [30 days as] required by section 3161(b) . . . such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

4. Section 241(a)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(5), entitled "Reinstatement of removal orders against aliens illegally reentering," provides in relevant part that:

    If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . the prior

illegally reentering the United States after having been previously deported Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 1. Subsequent to his arrest, the defendant was held in INS custody. Gov't's Mem. in Opp'n to Mot. to Dismiss ("Gov't's Opp'n Mem.") at 2.

The following day, September 29, 1998, Restrepo was served with a Notice of Intent/Decision to Reinstate Prior Order of Deportation ("Notice to Reinstate Deportation Order"), which had been completed by INS Special Agent Kevin W. Jarvis. *Id.;* Notice to Reinstate Deportation Order, Ex. 2 of Def.'s Mem. The Notice to Reinstate Deportation Order provided that:

> In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) [ ] and 8 CFR 241.8, you are hereby notified that the Attorney General intends to reinstate the order of November 1, 1996 entered against you.
>
> \*　\*　\*　\*　\*　\*
>
> In accordance with Section 241(a)(5) of the Act [ ], you are removable as an alien who has illegally reentered the United states after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You do not have a right to a hearing before an immigration judge.

Notice to Reinstate Deportation Order, Ex. 2 of Def.'s Mem.

order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

5. 8 CFR 241.8 provides in relevant part that: In establishing whether an alien is subject to this section, the immigration officer shall determine the following:

On September 29, 1998, Restrepo received this Notice and represented that he did "not wish to make a statement contesting this determination." *Id.* Therefore, the INS officer entered the following order that day:

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act. The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the Spanish language.

*Id.*

Also on September 29, 1998, Special Agent Jarvis completed a Record of Deportable/Inadmissible Alien in which he stated that "RESTREPO was previously deported as an aggravated felon to Colombia ... on May 15, 1997." Ex. 1 of Def.'s Mem. In addition, a hand written entry on the form states that Restrepo was "amenable to prosecution for [violation of] 8 U.S.C. § 1326," (illegal reentry). *Id.*

At the June 9, 1999 hearing, the government represented that it is the policy of the INS to detain deportable aliens solely for the purpose of obtaining travel documents from the consulate of the alien's native country and tickets for the alien to return to that country. Transcript of June

(1) Whether the alien has been subject to a prior order of removal....
(2) The identity of the alien, i.e., whether the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal....
(3) Whether the alien unlawfully reentered the United States....

9, 1999 Hearing ("June 9, 1999 Tr.") at 5. In addition, the government stated that it is not the policy of the INS to delay the deportation of a detained alien to facilitate a criminal investigation concerning him. *Id.* However, at the June 17, 1999 hearing, the government acknowledged that this policy was not followed in Restrepo's case. Transcript of June 17, 1999 Hearing ("June 17, 1999 Tr.") at 4–5. It usually takes about two weeks to arrange an alien's return to Columbia.[6] *Id.* at 9–10. In this case, no effort was made to obtain the necessary travel documents and tickets to deport Restrepo. *Id.* at 5.

Rather, on or about September 28, 1998, the INS made an impression of the defendant's fingerprints for analysis by the Federal Bureau of Investigation ("FBI"). Def.'s Mem. at 2; Ex. 3 of Def.'s Mem; MacAllister Aff. at ¶ 9. On the FBI fingerprint form, under the heading "Charge/Citation," is the entry "Reentry after deportation 8 U.S.C. § 1326." Ex. 3 of Def.'s Mem. In addition, under the heading "Disposition," is the entry "Detained by INS pending prosecution/removal." *Id.*

On November 6, 1998, the INS presented Restrepo's case to the U.S. Attorney's Office for consideration of criminal prosecution for illegal reentry after deportation, in violation of 8 U.S.C. § 1326. Gov't's Opp'n Mem. at 2. The INS Investigation Workplan for Restrepo's case shows no activity by the INS between September 28, 1998 and November 6, 1998, a period of 39 days. Ex. 5 of Def.'s Mem.

A criminal complaint was filed on November 20, 1998, charging Restrepo with illegal reentry after deportation under 8 U.S.C. § 1326. Gov't's Opp'n Mem. at 2. The same day, a criminal arrest warrant was issued. *Id.* Restrepo was arrested pursuant to that warrant and taken out of INS custody on November 23, 1998, and

has since been held in the custody of the United States Marshal. *Id.* at 2–3.

On December 2, 1998, 65 days after his initial arrest by the INS, Restrepo was indicted for illegal reentry after deportation in violation of 8 U.S.C. § 1326. *Id.* at 3. Although evidence of the correct date on which Restrepo was found in the United States was presented to the grand jury, the indictment erroneously stated that he was arrested on November 5, 1998. Indictment at 1; Second Affidavit of Timothy Q. Feeley at ¶ 6. A superceding indictment, correcting this error, was returned on March 31, 1999, after Restrepo's Motion to dismiss was filed. Superceding Indictment at 2.

As indicated earlier, on June 9, 1999, a hearing was conducted regarding the defendant's motion to dismiss the indictments pursuant to the Speedy Trial Act. That hearing was continued to June 17, 1999 to permit the government to present witnesses to testify to the relevant practices of the INS generally and the handling of Restrepo's case particularly. June 9, 1999 Tr. at 12.

At the June 17, 1999 hearing, however, the government moved for leave to dismiss the indictments with prejudice. The government represented that the process of deporting an alien to Colombia takes approximately two weeks to complete from the date of a final deportation order. June 17, 1999 Tr. at 9–10. As indicated earlier, with regard to Restrepo's case, the government acknowledged that the INS had made no effort to deport Restrepo during the 56–day period for which the INS had detained the defendant in its custody while his case was being prepared for presentation to the United States Attorney for prosecution. *Id.* at 4–5.

## II.  DISCUSSION

*United States v. Cepeda–Luna,* 989 F.2d 353, 355–57 (9th Cir.1993), provides the

---

**6.** At the June 17, 1999 hearing, the government represented that the usual time to effect the deportation of an alien varies depending on the country. June 17, 1999 Tr. at 11. The

government stated that a period of 30 days or more is usually required to deport an alien to the Dominican Republic due to the stringent procedural requirements of that country. *Id.*

appropriate framework for the analysis of the Speedy Trial Act issue in this case. There, the defendant had initially been detained by the INS as an alien who was deportable for having been convicted of certain drug offenses. *Id.* at 354–55. Subsequently, the government learned that the defendant had previously been deported and, therefore, arrested him for the criminal offense of illegal reentry. *Id.* The defendant in *Cepeda–Luna* was indicted for illegal reentry over three months after his initial arrest by the INS, but exactly 30 days after his subsequent criminal arrest. *Id.* at 355. Based on these circumstances, the defendant argued that his arrest by the INS had triggered the Speedy Trial Act, which was subsequently violated when he was indicted more than three months later. *Id.* at 354.

In *Cepeda–Luna*, the Court of Appeals for the Ninth Circuit held that the Speedy Trial Act had not been violated because the defendant had been indicted within 30 days of his criminal arrest. 989 F.2d at 354. The *Cepeda–Luna* court explained that, ordinarily, the Speedy Trial Act is not triggered by a civil detention because a civil detention is rarely based on a federal criminal offense. *Id.* at 355. The *Cepeda–Luna* court, however, recognized that the Speedy Trial Act would be triggered by "civil detentions which are mere ruses to detain a defendant for later criminal prosecution." *Id.* at 356–57 (citing *United States v. Okuda*, 675 F.Supp. 1552, 1554–55 (D.Haw.1987)).

In *Okuda*, the court held that an arrest by the INS triggered the Speedy Trial Act where the defendant was detained "for purposes of both immigration and criminal investigations." 675 F.Supp. at 1553. There, as here, the administrative charge and eventual criminal charge against the defendant were identical. *Id.* at 1555. The *Okuda* court determined that the INS arrest was used as a substitute for the criminal arrest, and, therefore, triggered the Speedy Trial Act. *Id.* As the defendant had been indicted more than 30 days after

his arrest by the INS, the court held that the Speedy Trial Act had been violated. *Id.; see also United States v. Osunde*, 638 F.Supp. 171 (N.D.Cal.1986) (INS arrest triggered Speedy Trial Act where defendant was arrested by INS for falsely claiming to be a United States citizen and was indicted criminally more than three months later for making that false claim).

In *United States v. Vasquez–Escobar*, 30 F.Supp.2d 1364, 1367–68 (M.D.Fla.1998), the court was faced with circumstances factually analogous to Restrepo's and held that the arrest of the defendant by the INS triggered the Speedy Trial Act where the administrative and criminal charges were both for illegal reentry by an alien. There, as here, the defendant was initially detained by the INS pursuant to § 241(a)(5) of the INA, which authorizes the reinstatement of removal orders against aliens illegally reentering the country. *Id.* at 1367. Approximately five months later, the defendant was indicted for illegal reentry under 8 U.S.C. § 1326. *Id.* at 1365–66.

The *Vasquez–Escobar* court held that, under § 241(a)(5), the defendant had no right to appeal the reinstatement of his prior deportation order, and, therefore, the INS detention constituted a final deportation order. *Id.* at 1367. The court reasoned that the INS did not hold the defendant to facilitate his deportation under § 241(a)(5), but rather, "held him ... specifically to provide the government the time and evidence necessary to establish his guilt beyond a reasonable doubt for an identical criminal charge of illegally reentering the United States under 8 U.S.C. § 1326(a)." *Id.*

In view of the foregoing, this court concludes that while a civil detention by the INS alone does not necessarily trigger the Speedy Trial Act, where that period of detention is used primarily or exclusively to develop criminal charges involving the conduct on which the civil arrest was based, the time limit established by the Speedy Trial Act begins running on

the date of the civil arrest. In essence, the INS has an obligation to act with all deliberate speed to remove from the United States a detained alien who has been finally determined to be deportable. Therefore, the Speedy Trial Act is triggered by an INS arrest whenever the INS detains an alien longer than is necessary to effect deportation in order to facilitate preparation of a criminal case against him relating to the conduct for which he was arrested civilly.

■ The instant case is analogous to *Okuda, Osunde* and *Vasquez–Escobar*, and is unlike *Cepeda–Luna,* because the administrative and criminal charges against Restrepo are identical. *Compare* § 241(a)(5) of the INA, 8 U.S.C. § 1231(a)(5), *and* 8 CFR § 241.8 (administrative provisions regarding illegal reentry), *with* 8 U.S.C. § 1326 (criminal provision regarding illegal reentry). In addition, as evidenced by the hand written notes on the Record of Deportable/Inadmissible Alien and the FBI fingerprint form, the day after the INS arrested Restrepo, it was finally determined that he was deportable and also recognized that he might be prosecuted under 8 U.S.C. § 1326 for illegal reentry.

Moreover, the government acknowledges that during the 56–day period that the defendant was detained in the custody of the INS, the INS did nothing to facilitate Restrepo's deportation, which ordinarily would have taken two weeks to accomplish. Instead, the defendant was detained by the INS to develop the criminal case against him. In these circumstances, the 30–day limit of the Speedy Trial Act for indictment following arrest began running on September 28, 1998, the date of the INS arrest.

At the June 17, 1999 hearing, the government recognized the implications of these circumstances and moved to dismiss the indictments against Restrepo with prejudice. The defendant and the court agreed. Thus, the court did not have to determine whether the dismissal should have been with or without prejudice. *See, e.g., Vasquez–Escobar,* 30 F.Supp.2d at 1368.

In addition, the government represented that it had reviewed the policies of the Boston offices of the INS and United States Attorney with regard to illegal reentry cases. According to the government, it is the policy of the INS to detain aliens only for the purpose of deportation, to present cases amenable to criminal prosecution to the United States Attorney's Office as quickly as possible, and not to detain anyone primarily or exclusively to facilitate preparation of a criminal case. As this case demonstrates, however, actual practice may depart from the government's stated policy in particular cases. When it does, the government's power to prosecute may be forfeited.

The court notes that it is now especially important that all involved, including the courts, be vigilant to assure that deportable aliens are not detained longer than necessary to effect their removal because, as a result of recent changes in the immigration laws, an alien detained by the INS no longer has the opportunity for habeas corpus relief from extended detention that was available at the time that the *Cepeda–Luna* case was decided. *See* 989 F.2d at 358. In *Cepeda–Luna,* the Ninth Circuit relied in part on the availability of such relief, stating:

> Our refusal to apply the provisions of the Speedy Trial Act to civil deportation detentions, however, does not mean that immigration officials possess unfettered discretion to incarcerate deportable aliens. Detainees like Cepeda–Luna may still request relief in federal court from extended deportation detentions by utilizing the habeas corpus proceedings in 8 U.S.C. § 1252(a)(1) [ (1993) ].[7] That

---

7. "8 U.S.C. § 252(a)(1) [ (1993) ] provid[ed] in relevant part:"

Any court of competent jurisdiction shall have authority to review or revise any de-

remedy, and not the Speedy Trial Act, will increase the efficiency of civil authorities.

*Cepeda–Luna,* 989 F.2d at 358. As amended, 8 U.S.C. § 1252(a)(1) no longer provides such relief.

In summary, in this case the INS did not act with all deliberate speed to remove Restrepo after he was finally determined to be removable for having illegally reentered the United States. Indeed, it made no effort to effect his removal. Instead, the INS used the period of Restrepo's detention solely to prepare criminal charges based on the conduct for which he was civilly detained. In these circumstances, the initial arrest of the defendant by the INS triggered the Speedy Trial Act with regard to the indictment for illegal reentry. Therefore, the 65–day period from the date of that arrest to the date of the initial indictment violated the 30–day limit for indictment following arrest required by the Speedy Trial Act. 18 U.S.C. § 3161(b). Accordingly, the Speedy Trial Act requires that the indictments against Restrepo be dismissed. 18 U.S.C. § 3162(a)(1).

In view of the foregoing, the government's motion for leave to dismiss with prejudice the indictments against the defendant (Docket No. 29) has been ALLOWED.

termination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability.