UNITED STATES of America

v.

Rudys Ernesto PENA.

Cr. No. 99–10192–MLW.

United States District Court,
D. Massachusetts.

Oct. 8, 1999.

Timothy Q. Feeley, Dena T. Sacco, U.S. Attorney's Office, Boston, MA, for plaintiff.

Lenore Glaser, Stern, Shapiro, Weissberg & Garin, Boston, MA, for defendant.

### MEMORANDUM AND ORDER

WOLF, District Judge.

This memorandum is based upon the transcript of the decision rendered orally on September 22, 1999, allowing defendant Rudys Ernesto Pena's motion to dismiss with prejudice. This memorandum adds citations, deletes some colloquy, and clarifies some language.

\* \* \* \* \* \*

The government in this case acknowledges that the Speedy Trial Act has been violated in the context of the law as described in *United States v. Restrepo*, 59 F.Supp.2d 133 (D.Mass.), a decision I issued on July 1, 1999. The issue presented is whether the case should be dismissed with or without prejudice. The case is being dismissed with prejudice for reasons that I will describe in detail.

First, however, it should be recognized that the relevant facts include the following. On December 30, 1995, the defendant Rudys Ernesto Pena was deported from the United States to the Dominican Republic, his native country. Affidavit of Ronald MacAllister at ¶ 7.

On April 27, 1999, Pena was taken into the custody of the Immigration and Naturalization Service (the "INS") at the Salem District Court where he had been brought, having been arrested on an unrelated traffic violation. R. of Deportable/Inadmissible Alien (April 27, 1999). The same day, the INS served Pena with a Notice of Intent and Decision to Reinstate Prior Order of Deportation. Notice of Intent/Decision to Reinstate Prior Order ("Reinstatement Order") (April 27, 1999). In essence, that Notice and Decision found that Mr. Pena was subject to being deported based on the prior order of deportation. *Id.* In connection with that, Mr. Pena represented that he did not wish to make a statement contesting this determination; thus, he was finally determined to be deportable on April 27, 1999. *See id.*

On April 30, 1999, the INS presented Pena's case to the United States Attorney's Office for consideration of criminal prosecution for illegal reentry after deportation in violation of 8 U.S.C. § 1326. INS Investigation Workplan.

On May 19, 1999, 22 days after Pena's initial detention by the INS and 19 days after the case had been presented to the United States Attorney's Office, a criminal complaint was filed charging Pena with illegal reentry. Criminal Compl. at 1. He was arrested criminally the following day, on May 20, 1999, and was transferred from INS custody to the custody of the United States Marshal Service. Clerk's Notes, Cr. No. 99–10192–MLW (May 20, 1999) (Docket No. 2).

There is, in the record, a reference to the fact that there was no evidence of INS efforts to remove Mr. Pena during the time after he was finally determined to be deportable again and before his criminal arrest. Custody Summary Inquiry (Ex. E to Def.'s Mot. to Dismiss). In addition, the INS Workplan for Mr. Pena's case indicates that the INS made no effort to deport him during the 23 days it maintained custody of him. INS Investigation Workplan.

Moreover, the Assistant United States Attorney prosecuting this case, Timothy

Feeley, acknowledges in his affidavit that "[i]nquiry at the INS has determined, contrary to its stated policy ... that no steps were taken to effect the deportation of Pena after issuance of service of the reinstatement order." Affidavit of Timothy Q. Feeley ("Feeley Aff.") at ¶ 16. Recent inquiry at INS also determined that deportation efforts in reinstatement cases subject to possible criminal prosecution within the last year have been absent in most, if not all, cases. *Id.* This representation that the INS's stated policy—that people would not be detained primarily or exclusively to develop a criminal case, but rather would be detained so travel documents could be obtained to deport them—was not followed in virtually all, if not all, cases within the past year, is, as Mr. Feeley acknowledged in the argument today, materially different than the representations he made on behalf of the United States in the *Restrepo* case on June 5 and June 17, 1999.

Initially, based on information provided to him by the INS, Mr. Feeley, in *Restrepo*, on June 5, 1999, argued that it was the policy of the INS to detain individuals similarly situated to Mr. Pena solely to get them travel documents, not to permit the development of a criminal case. Tr. of June 5, 1999 Hearing at 5, 33. On June 17, 1999, Mr. Feeley qualified that representation by saying that procedures may not have been followed diligently in every case. Tr. of June 17, 1999 Hearing at 9. However, he represented that deportation officers say that they treat reentry cases and immigration court orders of deportation the same and proceed apace with each without distinguishing between those in which criminal prosecution will occur or those in which it will not. *Id.*

The statement in the September 13, 1999 affidavit Mr. Feeley submitted, however, indicates that the *Restrepo* case, in which there was no effort to obtain travel documents because criminal prosecution was contemplated by INS, was not an aberration, but, rather, was consistent with the INS's actual standard practice. *See*

Feeley Aff. at ¶ 16. Essentially, the earlier misrepresentations were made to the court because INS officials misled the Assistant United States Attorney who, in good faith, not knowing of their unreliability, repeated them to the court. It appears, particularly, that Bruce Chadbourne, the Director of Deportation of the INS, had misled Mr. Feeley and caused him to mislead the court. Mr. Feeley asserts that occurred because Mr. Chadbourne was ignorant of what those under his supervision were doing.

I have no basis for determining whether it was reckless disregard for the truth or deliberate falsehood that caused the misleading statements to be made to Mr. Feeley. However, the practical effect was the same: misrepresentations were made to the court.

I included in the *Restrepo* decision a description of the government's policy saying:

> According to the government, it is the policy of the INS to detain aliens only for the purpose of deportation, to present cases amenable to criminal prosecution to the United States Attorney's Office as quickly as possible, and not to detain anyone primarily or exclusively to facilitate preparation of a criminal case. As this case demonstrates, however, actual practice may depart from the government's stated policy in particular cases. When it does, the government's power to prosecute may be forfeited.

*Restrepo*, 59 F.Supp.2d at 138.

Apparently the government's practice in the Boston area has departed from its policy in all or virtually all cases. And the fact that I credited the government's description of its practice and, in effect, treated Restrepo's case as an aberration may have misled people previously convicted, or who pled guilty, into thinking they might not have meritorious grounds for a petition for habeas corpus when they actually do.

In any event, on June 16, 1998, 28 days after the criminal complaint had been filed, 47 days after the United States Attorney's Office had been presented with Pena's case, and 50 days after Pena's initial arrest by the INS, Pena was indicted for illegal reentry. Indictment at 1–2. The government represents, and the court accepts, that the government then believed that the Speedy Trial Clock started running at the time of the criminal arrest based on the complaint. Therefore, the government believed, erroneously as it now acknowledges, that the 28 days used to secure an indictment was consistent with the Speedy Trial Act.

The government represents that it has made changes to its policy for the handling of future illegal reentry cases following the *Restrepo* decision. If followed, these changes will bring the United States' practice into conformity with the Speedy Trial Act. Feeley Aff. at ¶ 19.

■ With regard to the legal analysis, the Speedy Trial Act, 18 U.S.C. §§ 3161(b) and 3162(a)(1), requires that a defendant be indicted within 30 days of arrest on a complaint. As described in the *Restrepo* decision, however, the Speedy Trial clock also starts running if a civil arrest is used primarily or exclusively to detain someone pending preparation for a criminal prosecution. *Restrepo*, 59 F.Supp.2d at 137.

■ The government admits that this occurred in the present case with regard to Mr. Pena. After he was arrested civilly, no effort was made to secure the documents or take the other steps that would be necessary to deport him. He was held solely to facilitate the preparation of the criminal case. Doing this was contrary to INS's stated policy, as I described it in *Restrepo. Id.* at 138–39. It was, however, the government now explains, consistent with the practice in this district for at least the past year.

As indicated earlier, the INS's practice as described by the government in this case is different than the practice it described in its representations in *Restrepo* on June 5 and 17, 1999. The United States Attorney's Office was previously misinformed by the INS. Therefore, it made misrepresentations to the court without then knowing that its statements to the court were false. Those unreliable, false, and misleading statements were commendably corrected in Mr. Feeley's affidavit in this case, which reflects what he had discovered in handling other cases since the *Restrepo* decision was issued on July 1, 1999.

Under 18 U.S.C. § 3162(a)(1), in contemplating whether to dismiss with prejudice, the court must consider the seriousness of the offense, the facts and circumstances that require the case to be dismissed, and the impact of a reprosecution on the administration of the Speedy Trial Act and the administration of justice. According to the Court of Appeals for the First Circuit's decision in *United States v. Barnes*, 159 F.3d 4, 16 (1st Cir.1998), the court must also consider whether the delay caused the defendant any actual prejudice.

■ Starting with the last factor, I do not perceive that the delay in this instance caused Mr. Pena any actual prejudice. I recognize that by virtue of the complaint he was on notice within 30 days of his arrest by INS that he was subject to criminal prosecution even though he had not been indicted.

With regard to the seriousness of the offense, illegal reentry is a meaningful offense. It is a felony. It is a crime that generally the courts seek to punish in part to deter particular defendants from returning again illegally and especially to try to generally deter other individuals who may be tempted to do the same. It should be recognized, however, that illegal reentry itself is not a crime of violence. Nor is it as dangerous as drug dealing, although illegal reentry in some cases is associated with drug trafficking and violent activity.

This court has on a number of occasions confronted defendants charged with illegally reentering the country who have also committed other major crimes upon reentry, including drug dealing. As the government has confirmed, there is no evidence that Mr. Pena engaged in any other criminal activity after his reentry. He may have, of course, but there is no evidence indicating that he did. In addition, with regard to the seriousness of the offense, it appears that Mr. Pena would be eligible for a downward departure concerning his sentence under U.S.S.G. § 2L1.2, comment (n.5), based on the sentence imposed for the offense that prompted his original deportation.

Illegal reentry as a practical matter may in different cases present different considerations. The fact that I am deciding Mr. Pena's case this way does not mean that I would decide every case where somebody was the victim of a Speedy Trial Act violation the same way. However, some people come to this country initially, and particularly reenter, seeking economic opportunity or to be reunited with their family. These are understandable impulses, but they are illegal, and people get punished for doing that, including sentenced to prison by this court. However, as a practical matter, people who come back acting on those types of motives are not as dangerous and have not, in my view, committed as serious an offense as somebody who comes back so he can deal drugs again.

With regard to the facts and circumstances leading to the dismissal, this is a case where the government is solely responsible for the delay. Mr. Pena did nothing to contribute to it. The INS in Boston had a stated policy that provided that people subject to deportation would not be held primarily or exclusively to prepare cases for prosecution. INS officers, according to the policy, were supposed to promptly seek to obtain the documents necessary for deportation. The government now explains, however, that the INS in this district had an actual practice of making no such effort when prosecution was being contemplated. The violation of the Speedy Trial Act here was not the result of an unfortunate imperfection in the execution of a policy and practice that was generally sound.

The court recognizes that no individual or organization is perfect. If this case only resulted in an unfortunate imperfection, the decision with regard to whether the case should be dismissed with prejudice would be different. The circumstances of this case, however, are a manifestation of a systematic practice that regularly violated the rights of putative defendants. In addition, the United States was not candid in acknowledging this in *Restrepo* because, as I said earlier, the Assistant United States Attorney had been misled by representatives of the INS.

In *United States v. Vasquez–Escobar*, 30 F.Supp.2d 1364, 1367–69 (M.D.Fla.1998), the District Court dismissed the case with prejudice in meaningful measure because the delay was solely the government's fault. That is equally true here. *Restrepo* clarified the law in this district, but I note that if the INS had followed its stated policy, Mr. Pena might have been deported before even being charged criminally with a complaint. The complaint was issued 22 days after the INS arrest. I was told in *Restrepo* that it takes about 30 days to deport someone to the Dominican Republic. Here, the defendant was indicted 50 days later. It is possible that he was prejudiced, although I do not rely on the possible fact that he was. However, it is conceivable that the departure from stated policy, although not from actual practice, prejudiced the defendant.

With regard to the effect on the administration of the Speedy Trial Act of a dismissal with or without prejudice, I note that the INS has not been following its stated policy. It has been systematically violating the Speedy Trial Act rights of defendants or causing such violations to occur. There may now be many people

who are improperly incarcerated. Since the violation of the Speedy Trial Act in this case was not an aberrant event, dismissal with prejudice should send a message that the Speedy Trial Act must be obeyed and that it is important that the INS adhere to the new policy that has been developed by the United States Attorney's Office.

The fact that the government has revised its policy, in my view, weighs against dismissing with prejudice. It is not, however, decisive. The cases that I have been confronting illustrate that there can be a dramatic difference between a policy and a practice. Apparently many officials of the INS have been ignoring the INS policy for many years. While there are several other cases that have been dismissed, I intend and hope that the dismissal of this case with prejudice will reinforce the point that it is important that the INS conform its actual practices to the proper policies.

I have also considered the effect on the administration of justice of dismissing with prejudice. It would not be a burden on the courts, I expect, to resolve this case if it were not dismissed with prejudice. Typically, these cases result in guilty pleas and sentences. However, I am influenced by the fact that there is no evidence indicating that dismissal with prejudice will let a criminal dangerous to this community or country go free. As I said earlier, there is no evidence that Mr. Pena dealt drugs or committed any other serious crimes after he illegally reentered the United States.

In addition, he will be promptly deported. Thus, he will not be a threat to commit crimes in the United States in the near future. Hopefully, he will never come back again. If he does, I am confident he will get caught. It is likely that the government will not break the law again. Thus, he will be locked up. The government would undoubtedly argue that he received a benefit in this case and perhaps even have a basis for a substantial upward departure.

So Mr. Pena would be very unwise, indeed, I would say dumb, to ever come back to this country again. However, the fact that he is going to be promptly deported influences me, as it influenced the courts in *Vasquez–Escobar*, 30 F.Supp.2d at 1368–69, and *United States v. Osunde*, 638 F.Supp. 171, 175–76 (N.D.Cal.1986), to find that a dismissal with prejudice is appropriate.

It is my hope that this dismissal with prejudice will encourage the INS to be candid with the United States Attorney's Office so that Assistant United States Attorneys will not in the future make misrepresentations to the court, as occurred in *Restrepo*, despite Mr. Feeley's efforts to be careful and candid.

In my September 15, 1999 decision in *United States v. Salemme*, 1999 WL 714748, Cr. Nos. 94–10287–MLW and 97–10009–MLW (D.Mass.), I describe numerous instances of the Federal Bureau of Investigation not being candid with the United States Attorney's Office. As a result, prosecutors misled the court in meaningful, material ways and, at times, those prosecutors recklessly disregarded their duty to get information from the investigative agency. I do not perceive that Mr. Feeley has recklessly disregarded his duty, but that does happen in certain circumstances.

However, an investigative agency misleading a prosecutor, and the prosecutor then relying on that information in misleading the court, occurred in *Restrepo*, and it has occurred at least twice since Mr. Feeley made representations on June 5, 1999, that he had to qualify on June 17, 1999, and has had to radically alter in connection with this case.

As I said during the argument, this is not a matter of personal pique. Rather, it is vitally important that the courts be able to rely on the representations made by the government. Moreover, when the court incorporates those representations in written rulings, they have the inevitable effect of influencing the actions of people whose lives could be dramatically affected.

I believe that it is possible for somebody sitting in prison now as a result of the Speedy Trial Act violation to read *Restrepo* and think that this court properly found that *Restrepo* was an unfortunate departure from a proper practice where, in fact, the INS had a practice of regularly violating the Speedy Trial Act in cases involving illegal reentry. I will reiterate that. I continue to have confidence in Assistant United States Attorney Feeley's integrity, candor, and judgment. However, each of these cases is the United States of America versus somebody. And it is the government as a whole that has an obligation to be careful, candid, and reliable in the representations it makes to the court. It seems to me that it serves the interest of the administration of justice to send that message to the INS and other investigative agencies.

As indicated earlier, the prosecutor says that the government has learned its lesson and it is changing its procedures to comply with the requirements of the law as described in *Restrepo*. Thus, it is argued that no further deterrent message is required. The fact that there is a change in the stated policy has weighed in the government's favor. I am not satisfied, however, that the INS has been adequately educated to understand the importance of following policies that are designed to conform its conduct to the law. I hope that the dismissal with prejudice will emphasize that proper policy is not enough; actual practice is critical; and if proper policies intended to conform the government's conduct to the law are ignored, prosecutions can be jeopardized and potential convictions, as I said in *Restrepo*, 59 F.Supp.2d 133, 138, can be forfeited.

*ORDER*

Thus, for the foregoing reasons, the defendant's motion to dismiss the indictment with prejudice is hereby ALLOWED and this case is hereby DISMISSED.