UNITED STATES of America

v.

Richard Alfonso PINTO–
ROMAN, Defendant.

No. 1:04CR319.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 21, 2004.

Robert Coughlin, Assistant United States Attorney, United States Attorney's Office, Alexandria, for Plaintiffs or Petitioners.

May Shallal Kheder, Hanania & Kheder, Falls Church, for Defendants or Respondents.

### MEMORANDUM OPINION

ELLIS, District Judge.

Defendant, Richard Alfonso Pinto–Roman, filed this motion to dismiss the indictment for unlawful reentry after deportation pursuant to 8 U.S.C. § 1326(a)(2), arguing that an untimely indictment violated his rights under the Speedy Trial Act (the "Act"), 18 U.S.C. § 3161(b). Specifically at issue is:

(i) whether the government violated the Speedy Trial Act by issuing an indictment more than thirty (30) days after the defendant was taken into administrative detention by the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE) but less than thirty (30) days after the United States Attorney's Office (USAO) decided to prosecute the case and issued a warrant charging defendant where, as here, the ICE had completed all necessary investigation to prosecute the defendant two weeks before the USAO decided to prosecute the case.

For the reasons that follow, there is no violation of the Speedy Trial Act and accordingly defendant's motion to dismiss the indictment must be denied.

### I.

The record reflects the following undisputed facts. Defendant, a Bolivian citizen, first entered the United States on a B–2 visa as a visitor for pleasure on January 20, 1986. Later that year, on November 3, 1986, he was granted Lawful Permanent Resident status. On May 27, 1992, defendant was arrested by Drug Enforcement Administration Agents at the Miami International Airport and charged with importation of cocaine and possession of cocaine with the intent to distribute. He was convicted of the cocaine importation charge, an aggravated felony in violation of 21 U.S.C. §§ 952(a) and 960(a)(1),[1] and sentenced to five years in prison. After serving his sentence, defendant was deported from the United States to Bolivia on October 15, 1996.

On an unknown date thereafter, defendant reentered the United States without the consent of either the Attorney General or the Secretary of the Department of Homeland Security or their delegates. On May 25, 2004, defendant was found and arrested at the Dulles Airport by ICE Special Agent William C. Hampton and placed in administrative detention.[2] At the time of the arrest, Agent Hampton took defendant's fingerprints and gave him his *Miranda* rights, which defendant waived before giving a sworn statement that he had been deported previously and that he had reentered the United States without consent from the proper authorities.

Three weeks after defendant's arrest, on June 16, 2004, Agent Hampton sent defendant's fingerprints by facsimile to the FBI Special Processing Center, which promptly confirmed that the prints matched those

1. Importation of cocaine is an aggravated felony pursuant to 8 U.S.C. § 1101(a)(43)(B), and any alien convicted of an aggravated felony at any time after admission is deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).

2. In the course of the hearing, counsel for defendant proffered that defendant was present at Dulles Airport to meet his wife who was entering the United States from Spain for medical treatment. Apart from this proffer, the reasons for defendant's presence and arrest at Dulles Airport are neither disclosed in the record, nor material to the resolution of the issue at bar.

taken from the defendant following his 1992 arrest that originally led to his removal from the United States. On the same date, Agent Hampton referred the case to the USAO for the Eastern District of Virginia, which took the case under consideration for prosecution. After an internal review process which lasted approximately two weeks, the USAO on July 2, 2004, filed a criminal complaint and an arrest warrant against the defendant, charging him with unlawful reentry after deportation in violation of 8 U.S.C. § 1326(a) (as modified by 6 U.S.C. § 202(3), 202(4), 542(d), 557). Twenty-seven days later, on July 29, 2004, a grand jury returned an indictment charging defendant with unlawful reentry after deportation.

Defendant now challenges the indictment as untimely under the Speedy Trial Act because it was filed more than thirty days after defendant was "arrested or served in connection with such charges." *See* 18 U.S.C. § 3161(b). More specifically, defendant argues that the thirty-day period to file an indictment commenced to run on May 25, 2004, the date defendant was initially detained, because defendant confessed on that date to all facts necessary to prosecute him for unlawful reentry. In the alternative, defendant argues that the thirty days commenced to run, at the latest, on June 16, 2004, the date the ICE and the USAO received fingerprint confirmation that defendant, in fact, had been convicted previously of a crime and deported from the country. In other words, defendant argues that the filing period was triggered once the government had at its disposal all information necessary to prosecute defendant.

In response, the government argues that the thirty days did not commence to run until July 2, 2004, the date the USAO decided to prosecute the case and the date defendant was "arrested" in connection with the unlawful reentry charge. In the government's view, the two-week period between June 16 and July 2, 2004 should not count toward the thirty days because this period was reasonably devoted to the USAO's internal review process to decide whether to accept the case for prosecution. According to the government, this decision was not made until July 2, 2004, at which time defendant was arrested and charged and the Act's thirty-day clock began to run. The indictment issued twenty-seven days later.

II.

This dispute is governed by the Speedy Trial Act, 18 U.S.C. § 3161(b), which states in pertinent part,

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was *arrested or served with a summons in connection with such charges.*

18 U.S.C. § 3161(b) (emphasis added). In the event the government fails to comply with the filing requirement, the Act mandates dismissal of the charge. *See* 18 U.S.C. § 3162(a)(1).

 There is no controlling Fourth Circuit precedent regarding the application of the Act's thirty-day time limit to file an indictment to persons held in administrative detention. There is, however, ample settled authority in other circuits addressing the issue. Thus, it is well-settled in other circuits that civil detentions, including those for deportation, do not trigger the Speedy Trial Act's thirty-day limit to issue an indictment.[3] Instead,

---

**3.** *See United States v. Dyer,* 325 F.3d 464, 468 (3d Cir.2003); *United States v. Garcia–Mar-* *tinez,* 254 F.3d 16, 19 (1st Cir.2001); *United States v. Drummond,* 240 F.3d 1333, 1335

the Act's time limit commences to run only "after an individual is 'accused,' either by an arrest and charge or by an indictment." *United States v. Drummond,* 240 F.3d 1333, 1335–36 (11th Cir.2001). Put another way, if a defendant is held subject to a lawful civil detention, the time limit to indict the defendant on a criminal offense does not commence to run until the defendant is specifically arrested or charged for that offense; it does not begin to run prior to that date merely because the defendant was previously civilly detained.

■ This conclusion is entirely consistent with, indeed it is compelled by, the language of the Speedy Trial Act, which makes clear that the thirty-day limit to file an indictment applies only to an indictment issued in connection with the "offense" for which the defendant was "arrested." 18 U.S.C. § 3161(b). The Act further defines "offense" as "any Federal *criminal* offense." 18 U.S.C. § 3172(2) (emphasis added). Administrative detentions, including detentions pursuant to civil deportation charges, are civil in nature and thus, do not qualify as arrests in connection with criminal charges. *See United States v. Cepeda–Luna,* 989 F.2d 353, 355 (9th Cir. 1993) (finding that ICE deportation proceedings have been consistently classified as civil rather than criminal proceedings). Accordingly, the thirty-day indictment requirement does not begin to run until the

defendant is arrested or formally charged with a federal offense. *See id.* In this case, the criminal arrest and formal charging of defendant occurred on July 2, 2004, and thus by the plain terms of the Act, the thirty days commenced to run on that date. It follows, therefore, that the indictment was timely when filed twenty-seven days later on July 29, 2004.

■ But the analysis does not end there, for some circuits have sensibly recognized a limited "ruse" exception to the rule that ICE detentions are civil in nature and are not "arrests in connection with" a criminal charge under § 3161(b). In this regard, a civil detention may constitute "an arrest in connection with a criminal charge," and thus trigger the thirty-day Speedy Trial Act clock, when the civil detention is a "mere ruse[ ] to detain a defendant for later criminal prosecution."[4] And importantly, the burden is on the defendant to establish that the "primary or exclusive purpose of the civil detention was to hold him for future prosecution." *United States v. De La Pena–Juarez,* 214 F.3d 594, 598 (5th Cir.2000) (applying "ruse exception," but finding that defendant had failed to demonstrate that criminal prosecution was the "primary or exclusive purpose" of his civil detention); *see also Drummond,* 240 F.3d at 1336 (citing *United States v. Noel,* 231 F.3d 833, 836 (11th

---

(11th Cir.2001); *United States v. De La Pena–Juarez,* 214 F.3d 594, 597 (5th Cir.2000); *United States v. Grajales–Montoya,* 117 F.3d 356, 366 (8th Cir.1997); *United States v. Cepeda–Luna,* 989 F.2d 353, 355–56 (9th Cir. 1993).

4. *Cepeda–Luna,* 989 F.2d at 357 (9th Cir. 1993); *see also Garcia–Martinez,* 254 F.3d at 20 (1st Cir.2001) (applying same exception); *De La Pena–Juarez,* 214 F.3d at 598–99 (5th Cir.2000) (same); *Drummond,* 240 F.3d at 1336 (11th Cir.2001) (same); *Dyer,* 325 F.3d at 468–69 (3rd Cir.2003) (assuming without deciding to adopt the exception); *Grajales–*

*Montoya,* 117 F.3d at 366 (8th Cir.1997) (same).

It is worth noting that the "ruse" exception is not an exception to the Act, but rather a statutorily-based exception to the general principle that administrative detention does not trigger the Act's thirty-day clock for the issuance of an indictment. Thus, where administrative detention is the product of collusion for the purpose of advancing a criminal prosecution, the exception operates to make the administrative detention the § 3161(b) "arrest" required by the Speedy Trial Act to start the running of the thirty-day clock.

Cir.2000)) (applying "ruse" exception, but concluding that defendant had offered no evidence of a ruse to hold him for any purpose other than to facilitate his deportation).

██ Defendant concedes the general principle that ICE detentions are civil in nature and are not properly considered arrests in connection with criminal charges under the Act. Here, however, defendant argues that his ICE detention was merely a ruse to facilitate his ensuing criminal prosecution for unlawful reentry. According to defendant, this ruse to detain him for criminal proceedings began either on May 26, 2004, the date of his initial detention by the ICE, or at the latest on June 16, 2004, the date the USAO received all the necessary evidence to prosecute him. Yet, defendant offers no persuasive evidence to meet his burden of showing, or even raising a suspicion, of collusion between the USAO and the ICE. Indeed the record is convincingly to the contrary. Thus, the thirty-day period commenced to run on the date of his criminal arrest and the indictment twenty-seven days later was timely.

Defendant first argues that the thirty-day limit commenced to run on May 26, 2004, the date of defendant's detention by the ICE because, on that date, defendant fully confessed to all facts needed to prosecute him for unlawful reentry. Yet, defendant's immediate confession does not give rise to an inference that the ICE thereafter detained defendant in collusion with the USAO solely for the purpose of criminal prosecution. Significantly, defendant made his confession to ICE officials in the context of an ICE detention. There is no evidence that the USAO was even aware of defendant's detention on May 26, 2004, much less that any member of the USAO encouraged the ICE to detain him. In these circumstances, as the First and Fifth Circuits have held, no inference of a ruse is warranted. *See De La Pena–Juarez,* 214 F.3d at 599–600 (defendant confessed immediately upon detention by the INS that he illegally reentered the United States, but Speedy Trial clock not triggered despite five-month detention before indictment); *Garcia–Martinez,* 254 F.3d at 18 (defendant confessed to INS immediately upon detention but detention did not trigger Speedy Trial Act). Moreover, even if federal prosecutors had been aware of, or played some role in, defendant's ICE detention, this would not, by itself, warrant the conclusion that they colluded with the ICE to detain defendant for purposes of criminal prosecution. *See De La Pena–Juarez,* 214 F.3d at 600 (citing *Cepeda–Luna,* 989 F.2d at 356) ("This circuit has repeatedly declined to apply the Speedy Trial Act in situations where the defendant's detention is not pursuant to federal criminal charges, even though federal criminal authorities may be aware of and even involved with that detention."); *see also United States v. Orbino,* 981 F.2d 1035, 1036–37 (9th Cir.1992) (thirty-day limit not triggered by INS detention though federal prosecutors "kept a sharp eye" on civil immigration proceedings). Thus, the fact that defendant confessed to ICE officials, even assuming that this confession was sufficient on its own to support a prosecution, does not reflect collusion or any kind of ruse to facilitate defendant's criminal prosecution by continuing to detain him after May 26, 2004.

In support of his position that the ICE detention on May 26, 2004 was a ruse to facilitate his criminal prosecution, defendant relies on *United States v. Okuda,* 675 F.Supp. 1552 (D.Haw. 1987) to argue that an ICE detention triggers the Speedy Trial Act when the administrative and criminal charges against the defendant are identical. This reliance is misplaced; *Okuda* is neither apposite nor does it stand for this proposition. In this case, unlike

*Okuda,* it is not clear from the record that defendant was detained for the same reason he was indicted.[5] Yet, even assuming his civil charge was identical to his eventual criminal charge, that fact alone will not support a finding of a ruse to facilitate his prosecution. *Okuda* is not to the contrary. There, the court found not only that the defendant was charged with identical civil and criminal charges, namely willfully and knowingly using a false visa, but also that the evidence was sufficient to conclude that the government "fully intended to charge the defendant with the identical criminal charge and purposefully utilized the I.N.S. to detain the defendant pending the filing of the criminal complaint." *Id.* at 1555. No such evidence exists here.

 Although similarity between the civil and criminal charges may in some circumstances suggest collusion, it is not, by itself, sufficient to satisfy defendant's burden to demonstrate that the "primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution." *De La Pena–Juarez,* 214 F.3d at 598; *see also Drummond,* 240 F.3d at 1335 (citing *Noel,* 231 F.3d 833) (finding argument unpersuasive that a defendant detained by the ICE for unlawful reentry was necessarily detained as a ruse to facilitate prosecution for the criminal charge of unlawful reentry after deportation). Thus, some evidence of collusion to detain defendant to facilitate his prosecution is still necessary even when the administrative and criminal charges are identical, and defendant here has failed to produce any such evidence.

 Also unpersuasive is defendant's alternative argument that the thirty days commenced to run on June 16, 2004, the date the USAO gained access to all facts necessary to prosecute defendant, including his confession and fingerprint evidence. To begin with, this second argument, like the first, founders on the statutory language. Section 3161(b) provides that an indictment shall be filed within thirty days of the date on which the individual was "arrested or served with a summons" in connection with those charges. If the defendant was not "arrested" in connection with any criminal charge when he was initially detained on May 26, 2004, there is no reason to think that his detention would *become* an "arrest" or formal charge, within the meaning of the Act, merely because the USAO learned of facts necessary to prosecute him on June 16, 2004. Simply put, Congress did not prescribe that the thirty-day period to indict would begin to run at the moment the government had enough factual information to indict; to the contrary, Congress clearly made the defendant's arrest, or a formal charge, the event that would trigger the Speedy Trial Act's thirty-day clock. Thus, the government's thirty days to indict began to run not on June 16, but on July 2, the date of defendant's arrest in connection with the criminal charge.

 Nor can defendant rely on the "ruse" exception to escape this conclusion, for he has offered no evidence to suggest that the two-week delay between June 16, 2004 and July 2, 2004 was incident to anything other than the USAO's normal internal decision-making process to determine whether to prosecute the case. Defendant cannot invoke the ruse exception without some evidence that the USAO colluded with the ICE to prolong the administrative detention for purposes of advancing the criminal prosecution.

---

**5.** Defendant could have been detained as an alien convicted of an aggravated felony pursu- ant to 8 U.S.C. § 1227(a)(2)(A)(iii).

Particularly instructive, in this regard, is the Fifth Circuit's decision in *De La Pena–Juarez.* There, on facts similar to this case, the court found no evidence of collusion between the USAO and the INS even though there was a forty-five day delay between the INS's referral of the case for prosecution and the defendant's arrest. 214 F.3d at 600. The court there found persuasive the government's contention that the delay was due merely to the USAO's heavy workload. *Id.* For the same reason, the same result obtains here; the two-week period between June 16 and July 2 allowed supervising attorneys to meet and discuss whether to deploy the government's limited prosecutorial resources to prosecute defendant. There is no reason to infer from these facts that the USAO and the ICE were colluding to extend defendant's civil immigration detention for purposes of aiding the prosecution.

Defendant cites several cases in support of his argument that the Speedy Trial Act thirty-day clock commenced to run on the date the government had sufficient information to prosecute defendant. Yet, none of these cases either stands for this proposition or is apposite; instead, in each of these cases, unlike the instant case, there was, as each court found, also sufficient evidence of collusion upon which to invoke the "ruse" exception. In none of these cases did the court find that the mere completion of a factual investigation alone triggered the thirty-day period. *See, e.g., United States v. Bravo,* 2004 WL 1535787, at * 2–3, 2004 U.S. Dist. LEXIS 12236, at * 8–9 (E.D.Pa.2004) (time limit triggered by civil detention because detention was targeted for arrest even before immigration detention, and also noting that indictment filed at least 37 days after prosecutor received all evidence deemed necessary to prosecute); *United States v. Vasquez–Es-*

*cobar,* 30 F.Supp.2d 1364 (M.D.Fla.1998) (government admitted that it was not holding the defendant to effectuate his deportation under § 241(a)(5), but to provide the government the time and evidence necessary to establish defendant's guilt).

 In sum, a defendant cannot successfully invoke the ruse exception based only on the similarity between his civil and criminal charges nor on a short delay between the date the government had all necessary information to prosecute and his criminal arrest. Thus, in the absence of any evidence to satisfy defendant's burden of demonstrating that his civil detention was primarily or exclusively intended to further his criminal prosecution, the ruse exception to the general rule does not apply. It follows that defendant's administrative detention did not trigger the Act's thirty-day period, and hence the indictment against him is timely and must stand.[6]

An appropriate order has issued.

---

**6.** Neither presented nor decided here is whether a substantially longer delay, coupled with other facts, might give rise to an inference of collusion.